STATE OF CONNECTICUT *v.* RICHARD J. TANZELLA
(9914)

DALY, LANDAU and FREEDMAN, Js.

---

Argued March 31—decision released August 11, 1992

*Jon L. Schoenhorn,* with whom, on the brief, was *Christine M. Fiedler,* legal intern, for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John H. Malone,* supervisory assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of Gen-

eral Statutes § 53a-70, assault in the third degree in violation of General Statutes § 53a-61,[1] threatening in violation of General Statutes § 53a-62[2] and unlawful restraint in the first degree in violation of General Statutes § 53a-95. He claims that the trial court improperly (1) allowed the state to make a substantive amendment to the information after the commencement of trial, (2) admitted extrinsic evidence to impeach the defendant on a collateral matter, and (3) admitted prejudicial hearsay testimony.

The jury reasonably could have found the following facts. On July 16, 1988, the victim went to the Club Car, a Hartford nightclub, to meet some friends. At approximately 1:30 a.m. on July 17, she left the club by herself and walked to her car. As she was walking to her car, the defendant approached her and began a conversation. The defendant identified himself and asked if she would give him a ride to his house in Manchester. The victim initially refused but then changed her mind after the defendant emptied his pockets to show he did not have a weapon. The victim examined the defendant's driver's license after he emptied his pockets. She then drove the defendant to Manchester and stopped at a school parking lot near his apartment.

---

[1] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ."

[2] "[General Statutes] Sec. 53a-62. THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience. . . ."

According to the victim's testimony, when they arrived at the school parking lot, the defendant grabbed her and turned off her car's engine. The defendant told the victim to remove her pants but she attempted to struggle with him. She was able to restart the car but again he removed the keys and threatened her with death if she kept resisting. During the course of the struggle, the defendant punched the victim in the head and she bit him on the forearm. The defendant then sexually assaulted the victim and forced her to engage in sexual intercourse. After intercourse, the victim drove the car, following the defendant's directions, toward his apartment. While driving, the victim saw a house with its lights on and drove into the driveway. She grabbed her keys and fled from the car to a side door of the house. She began to bang on the door and saw that the defendant had exited her car. The defendant ran up the street and the victim returned to her car. As she drove toward a hospital, the victim encountered a Manchester police officer and reported that she had been raped.

After meeting with the victim and further investigation, the police went to the defendant's apartment. The police officers told the defendant he was under investigation for sexual assault. The defendant denied any knowledge of a sexual assault and stated that he had been out with his girl friend all night. The defendant's girl friend, Virginia Cross, was also at his apartment when the police arrived. The police arrested the defendant and took him into custody. The defendant telephoned Cross from the police station. A police officer who overheard the defendant's conversation with Cross testified that he stated, "You are driving a nail into my coffin." According to this officer, the defendant also told Cross to change her story and tell the police that she did not remember anything because she

suffered from blackouts. The police photographed a small bitemark on the defendant's forearm.

The defendant testified that after spending the evening with Cross at a club in Hartford, he became separated from her as the club was closing. The defendant stated that he and Cross were getting along very well and had not been fighting that evening. The defendant began to look for Cross outside of the club and during this search he met the victim. According to the defendant's version, the victim offered to drive him home and during the drive placed her hand on his knee. At the school parking lot, they kissed and then had consensual sexual intercourse. After this, the victim asked if she could go to the defendant's apartment with him. The defendant refused because his girl friend was at his apartment. The defendant told the victim that "having sex in a parking lot is not a way to start a relationship for the future." The victim then drove the defendant to a house whereupon she exited the car and walked into the house. The defendant exited the car and took the victim's pants and nylons with him. He deposited the defendant's pants and nylons in a dumpster near his apartment.

I

The defendant first claims that the trial court improperly allowed the state to amend the information after the completion of jury selection. The defendant argues that the amended information charged offenses different from the original information in violation of Practice Book § 624.

The following facts are relevant to the disposition of this claim. Before the commencement of jury selection, the third count of the state's information charged the defendant with assault in the third degree in violation of General Statutes § 53a-61 (a) (2). The fourth count of the state's information charged the defend-

ant with threatening in violation of General Statutes § 53a-62 (a) (3). After jury selection, the trial court clerk read the information to the jury. After this reading, the assistant state's attorney, outside the presence of the jury stated that he discovered for the first time that the third and fourth counts of the information were incorrect and claimed that a drafting error resulted in the wrong subdivisions being cited in the original information. He stated that the third count should have alleged a violation of subdivision (1) instead of subdivision (2) of § 53a-61 (a), and the fourth count should have alleged a violation of subdivision (1) instead of subdivision (3) of § 53a-62 (a). The defendant, relying on Practice Book § 624, objected to the state's attempt to amend the original information. The defendant argued that the state could amend the information after the commencement of trial only if the amendment substituted a lesser included offense. He argued that the amendment changed the nature, elements and proof as to both the assault and threatening counts. According to the defendant's argument, the change in subdivisions of the assault count resulted in a clearly different substantive offense's being charged. The state argued that the amendment did not add extra or different charges and that the defendant faced the same penalty under the original and amended information. The defendant focused on the change related to the third count concerning assault in the third degree because the state originally had to prove serious physical injury and, under the amendment, had to prove only physical injury.[3] The defendant argued that the amendment changed the theory of the case and prejudiced his defense because he lacked proper notice of the new charges. The trial court allowed the amendment, concluding that it did not amount to a substantive change because the offenses remained the same and the amend-

---

[3] See footnote 1, supra.

ment altered only the manner in which the offense was committed. The trial court asked defense counsel whether he needed any additional time to address the changes in the amendment. Defense counsel felt that he did not need additional time at that point but stated that he would inform the court if the amendment resulted in a time problem.

Because this amendment occurred after the jury was selected, the trial had commenced and Practice Book § 624 governed the amendment. *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986). After the commencement of trial, the state can amend the information without the defendant's consent as long as "no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." Practice Book § 624. "The state's right to amend must be limited to substitutions that do not charge the defendant with an additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself. See U. S. Const., amend. VI; Conn. Const., art. I, § 8." *State* v. *Jacobowitz,* 182 Conn. 585, 590, 438 A.2d 792 (1981). "Unless the original and the amended informations charge the defendant with the same crime, as was the case in *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980), amendment is permissible only to charge a lesser included offense." Id., 590–91.

Under the state's original information, it was required to prove that the defendant acted recklessly and thereby caused a serious physical injury to another person to secure a conviction based on § 53a-61 (a) (2). Under the amended information, to secure a conviction based on § 53a-61 (a) (1), the state had to prove that the defendant intentionally caused another to suffer a physical injury. Although both subdivisions (1) and (2) of subsection (a) are generally classified as the crime

of assault in the third degree, we conclude that, for purposes of Practice Book § 624 they are not the same offense. Each subdivision within § 53a-61 (a) requires proof of different mental states as well as different resulting physical injuries from the defendant's conduct. The physical injury element of § 53a-61 (a) (1) requires proof of "impairment of physical condition or pain." See General Statutes § 53a-3 (3). In contrast, the serious physical injury element of § 53a-61 (a) (2) is defined as "physical injury which creates a substantial serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." General Statutes § 53a-3 (4).

The state's reliance on *State* v. *Secore,* 194 Conn. 692, 481 A.2d 741 (1984), *State* v. *Wallace,* supra, and *State* v. *Sullivan,* 11 Conn. App. 80, 525 A.2d 1353 (1987), to support its claim that the amendment in this case did not charge an additional or different offense is misplaced because the statutes in those cases are distinguishable from this case. In *Wallace,* the defendant was initially charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). After discovering that it did not have the actual weapon used in the robbery, the state was allowed to amend the original information to charge the defendant with a violation of § 53a-134 (a) (4) instead of § 53a-134 (a) (2). *State* v. *Wallace,* supra, 239. The amendment was necessary because subdivision (2) required proof that the defendant was armed with a deadly weapon while subdivision (4) required proof that the defendant threatened the use of what he represented by his actions to be a firearm. The statutory subdivisions (2) and (4) for robbery in the first degree under General Statutes § 53a-134 (a), unlike §§ 53a-61 and 53a-62, do not contain different mental states and different resulting harms. Our Supreme Court also noted that the defendant in *State* v. *Wallace,* supra, was not prejudiced by

the amendment because he raised an alibi defense and therefore did not dispute whether the robbery was committed by the use of a deadly weapon or by the threat of the use of a firearm. *State* v. *Wallace,* supra, does not control in this case because the amendment there did not charge the defendant with a different crime and therefore did not violate Practice Book § 624. Here, the amendment charged the defendant with two different offenses in violation of Practice Book § 624 and violated the defendant's constitutional right to fair notice.

In *State* v. *Secore,* supra, 698, our Supreme Court found "that the language of [General Statutes] § 53a-70 divides the statute, not into crimes but into two methods of committing the same crime; see *State* v. *Wallace,* 181 Conn. 237, 239, 435 A.2d 20 (1980) . . . ." On the basis of that interpretation, the substitute information charging the defendant in *Secore* with a sexual assault " 'by the threat of use of force' " rather than " 'by the use of force' " as charged in the indictment did not charge the defendant with a different crime. Again, the substitute information in *State* v. *Secore,* supra, unlike the amended information in this case, did not require a proof of a different mental state and of a different resulting harm. The subdivisions in §§ 53a-61 (a) and 53a-62 (a) have different mental states and different resulting harms and are thus distinguishable from §§ 53a-70 and 53a-134.

The statutory classification for risk of injury to a child in violation of General Statutes § 53-21[4] is also different from § 53a-61 and § 53a-62. In *State* v. *Sullivan,* supra, the state initially charged the defendant with

---

[4] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

impairing the morals of a child in violation of the first part of § 53-21. The amended information sought to charge the defendant with both parts of § 53-21 instead of only the first part. This court upheld the trial court's granting of the amendment after commencement of trial because it did not charge the defendant with a different or additional offense. A comparison of § 53-21 to §§ 53a-61 and 53a-62 reveals that the latter statutes' subdivisions are not merely different methods of committing the same crime. Each subdivision under §§ 53a-61 (a) and 53a-62 (a) has different results and different mental states. Here, the amendment charged the defendant with different offenses in violation of Practice Book § 624. Because the amended information charged the defendant with different crimes that did not constitute lesser included offenses of the original charges, the state was not permitted to amend the information in this case. *State* v. *Jacobowitz,* supra, 590–91. The judgment of conviction rendered on the third and fourth counts must be set aside because of the improper amendment and judgment of not guilty is directed. Id., 593.

We must next determine whether the improper amendment concerning the assault in the third degree and the threatening conviction contributed to the defendant's convictions on the remaining three counts. *State* v. *Ignatowski,* 10 Conn. App. 709, 715, 525 A.2d 542, cert. denied, 204 Conn. 812, 528 A.2d 1157 (1987). Because the improper amendment violated the defendant's constitutional right to notice of the charges against him, the state must show that the improper amendment was harmless beyond a reasonable doubt as to the remaining counts. Id. We conclude that the state has met its burden concerning the improper amendment's effect on the three remaining counts.

In *State* v. *Ignatowski,* supra, 712, the defendant was charged in the first information with sexual assault in

a cohabiting relationship in violation of General Statutes § 53a-70b (b), and assault in the third degree. The state's second information charged the defendant with one count of assault in the third degree and three counts of sexual assault in the first degree in violation of § 53a-70 (a). Before jury selection, the defendant raised the affirmative defense of cohabitation pursuant to General Statutes § 53a-67 (b) to the three counts of sexual assault in the second information. After commencement of the trial, the state amended the second information to include three additional charges of sexual assault in a cohabiting relationship. The defendant was found guilty on both counts under the first information and all counts in the second information except for the three additional counts of sexual assault in a cohabiting relationship of which the defendant was acquitted.

We found that the trial court's granting of the amendment to the second information concerning the three additional counts of sexual assault in a cohabiting relationship violated Practice Book § 624. Id., 714. The state argued that the improper amendment was harmless error because the defendant was acquitted of the three additional counts that were improperly added. Id., 715. We found that although the improper amendment did not affect the verdicts under the first information and the assault conviction in the second information, it did affect the guilty verdicts related to the three counts of sexual assault in violation of § 53a-70 (a). The error in that case was not harmless beyond a reasonable doubt because it "unfairly prejudiced the defendant's ability to present a statutory affirmative defense to the three charges of sexual assault in the first degree." Id., 716. In *Ignatowski*, the improper amendment forced the defendant to choose between not raising the affirmative defense of cohabitation or raising that defense with the risk of proving

an element of the improperly added charges of sexual assault in a cohabiting relationship. Id. The defendant's failure to pursue the affirmative defense of cohabitation due to the improper amendment deprived him of a defense to the three counts of sexual assault in the first degree. This prejudiced the defendant and resulted in an unfair trial. Id. The improper amendment to the second information did not contribute to the defendant's conviction of assault in the third degree in that information. Therefore, it was harmless beyond a reasonable doubt as to that conviction. Id., 717.

In the present case, the amendment changing the charges related to the assault in the third degree and the threatening count did not prevent the defendant from raising a defense to the remaining counts of sexual assault in the first degree and unlawful restraint. The defendant's claim that the charges in the improper amendment "formed the very foundation" of the remaining three counts is without merit. The elements for a conviction under §§ 53a-70 and 53a-95 are separate and distinct from the elements of the amended information. The amended information did not force the defendant to alter his defense to the remaining counts of sexual assault and unlawful restraint.

The defendant also argues that the amendment contributed to his conviction on the remaining counts because it removed the contradiction in the original charges concerning allegations of recklessness in the violations of §§ 53a-61 (a) (2) and 53a-62 (a) (3) and allegations of intentional action in the remaining counts. According to the defendant, the jury would not have been able to reconcile the difference between the allegation of reckless and intentional conduct by the defendant. Our Supreme Court has noted that even though intentional conduct and reckless conduct have different meanings, "this does not mean that the same factual circumstances cannot support a jury finding of

either intentionality or recklessness." *State* v. *Giguere,* 184 Conn. 400, 403–404, 439 A.2d 1040 (1981). The jury could have found that although the defendant was not guilty of reckless conduct in assaulting and threatening the victim, he did intentionally sexually assault and unlawfully restrain her. There was not such a clear contradiction between the original counts even though each charge consisted of different elements.

The improper amendment did not contribute to the defendant's conviction of the three remaining counts. The trial court's improper amendment was harmless beyond a reasonable doubt as to the remaining convictions.

## II

The defendant next claims that the trial court improperly admitted evidence of a collateral matter to impeach the defendant. The following facts are relevant to this claim.

The defendant testified that he went with Cross first to the Club Car and then to City Lights, both located in Hartford. He was with Cross the entire time at City Lights except when they went to the restrooms. According to his testimony, he and Cross were getting along and had not had any arguments that evening. The defendant expected Cross to come to his apartment after the bar closed.

During cross-examination, the defendant stated that although he was with Cross at the Club Car, he did have a conversation with a woman named Denise in the absence of his girl friend. A cocktail napkin with a phone number and the name Denise written on it was discovered in the defendant's pants pocket the night of his arrest. When asked how he got Denise's phone number the defendant stated that "[s]he might have asked me if I wanted it." The defendant could not

remember whether he actually called Denise but thought he did not call her. Upon further questioning, the defendant did not believe that he requested Denise's number because he was with Cross. The defendant later stated that he did not call Denise but that she might have called him.

The state then sought to call Denise Burns to the stand. The defendant objected and, after oral argument on the matter, the court allowed her to testify. The court rejected the defendant's argument that Burns' testimony constituted an attempt by the state to impeach the defendant concerning a collateral matter. The court found that this testimony was not collateral because of the difference between the victim's testimony concerning how she met the defendant and defendant's testimony of their meeting. The testimony by Burns indicated that the defendant approached her and thus also contradicted the defendant's claim of devotion to his girl friend, Cross. The court found that because the defendant's encounter with Burns had occurred around the time of the encounter with the victim that Burns' testimony went to a basic issue in the case. The defendant took exception to the court's ruling.

Burns testified that while at the Club Car she spoke with the defendant for approximately ten to fifteen minutes. She stated that because she did not offer her telephone number to the defendant, he must have asked for it. She received two or three telephone calls from a man identifying himself as the defendant approximately one month after meeting the defendant at the club.

It is well established that a witness' testimony on a collateral matter cannot be impeached through the admission of extrinsic evidence. *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S.

967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). "A contradiction is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict a witness." *State* v. *McCarthy,* 197 Conn. 166, 176, 496 A.2d 190 (1985).

If we assume that the admission of Burns' testimony concerned a collateral matter, the defendant would have to establish that the trial court's action was harmful because this claim does not involve the violation of a constitutional right. *State* v. *Moody,* 214 Conn. 616, 629, 573 A.2d 716 (1990). A new trial would be necessary if the admission of Burns' testimony "was so prejudicial to the rights of the defendant as to deprive him of a fair trial . . . ." *State* v. *Ruth,* 181 Conn. 187, 196, 435 A.2d 3 (1980). The defendant has failed to demonstrate that "it is more probable than not" that the admission of Burns' testimony affected the jury's verdict. *State* v. *Moody,* supra.

The defendant correctly argues that his credibility and the victim's credibility were very important because of the nature of this case. Burns did not accuse the defendant of any improper conduct or state that he forced himself on her. Her testimony was not inflammatory or confusing such that the jury would treat the defendant's encounter with Burns and his encounter with the victim the same. The defendant's failure to obtain a cautionary instruction as to the use of Burns' testimony weakens his claim of prejudice from the admission of her testimony. See *State* v. *Conroy,* 194 Conn. 623, 628, 484 A.2d 448 (1984). On the basis of our review of the evidence, we are unable to conclude that the admission of Burns' testimony deprived the defendant of a fair trial. Thus, any error concerning the admission of Burns' testimony was harmless.

## III

The defendant next claims that the court improperly admitted prejudicial hearsay testimony into evidence. We disagree.

The following facts are pertinent to the resolution of this claim. The state offered into evidence a sworn police statement made by Cross. The statement was offered without objection as a past recollection recorded because Cross could not remember any details about the night of the defendant's arrest. Cross stated that at the time she made her statement she had "too much alcohol and very little sleep." Cross also testified that she had experienced dizzy spells and blackouts.

After the state presented its case-in-chief, the defendant called Manchester police officer William Daley to testify about the circumstances surrounding Cross' statement. During the defendant's direct examination of Daley, the officer stated that Cross had insisted that certain facts about the evening not be included with her sworn police statement. The defendant did not inquire as to what Cross wanted excluded from her statement. During cross-examination, the state asked Daley to relate what Cross wanted kept out of her statement. The defendant objected claiming that Daley's answer constituted hearsay. The state responded that the defendant opened the door by calling Daley and asking him about the circumstances surrounding the report.

The court held a hearing outside the jury's presence concerning Daley's testimony about the omissions from Cross' police statement. Daley stated that at the time of her statement Cross did not want to include any reference to the fact that she had been drinking heavily that evening. Cross was concerned about drunk driving because in her statement she admitted to driving

the defendant to East Hartford to pick up his car after she returned from Hartford. Cross also did not want to mention that she and the defendant had an intense argument that evening that resulted in the defendant's leaving the club without her. Cross could not recall why she was arguing with the defendant.

Daley further testified that his memory of the events surrounding Cross' statement differed from his written report. He admitted that he failed to read the report thoroughly after writing it at the end of his shift. His report did not include Cross' statement about having an intense argument with the defendant. The report also stated that Cross did not "remember having a fight with Tanzella but it is very unusual that she would leave with him or vice versa." Daley stated that he mistakenly typed "with" instead of "without" in his report. According to Daley's recollection, Cross thought that the reference to the argument might get the defendant in trouble. The state argued that Cross' statements were admissible to show her state of mind at the time of her statement, or as a prior inconsistent statement or under the residual exception to the hearsay rule. The defendant argued that Cross' statements were hearsay and not admissible under any exception. The defendant also argued that Cross was not unavailable because she had already testified on behalf of the state. The state had brought Cross from California but she had returned after testifying for the state. The state argued that Cross' statements were reliable because they were against her interest as well as that of the defendant, her boyfriend at the time of her statement.

The court ruled that Cross' statements were relevant to the defendant's opportunity to commit the crime, a material fact in the case, and that the statements also fit within the state of mind exception to the hearsay rule because the statements revealed Cross' state of mind at the time she made her statement. The court

also admitted the statements by Cross under the residual exception to the hearsay rule. Cross' statements were found to be reliable and necessary to the resolution of the case. The court further found that, in the interests of justice, these statements should be admitted for the truth of the matter. The defendant took exception to the court's ruling. The defendant later entered Daley's written report into evidence.

"A statement made out of court which is offered to establish the truth of the facts contained in the statement is hearsay." *State* v. *Packard,* 184 Conn. 258, 274, 439 A.2d 983 (1981). Cross' statements to Daley that were not included in his report fit within the definition of hearsay. "Though generally inadmissible, hearsay may be admitted if there is a sufficient probability that the statement is reliable and trustworthy, if the evidence contained in the statement is necessary to resolution of the case, and if the trial court concludes that admitting the statement is in the interests of justice. 5 Wigmore, Evidence (Chadbourn Rev. 1974) § 1422, pp. 253–54." *State* v. *Stepney,* 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

It must be first determined "whether there was a reasonable necessity" for the admission of Cross' statement to Daley. *State* v. *Sharpe,* 195 Conn. 651, 664, 491 A.2d 345 (1985). Our Supreme Court adopted the Wigmore definition of necessity which is satisfied by a showing that the facts contained in the hearsay statement "may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." *State* v. *Sharpe,* supra, 665. The defendant, relying on *In re Jason S.,* 9 Conn. App. 98, 516 A.2d 1352 (1986), argues that since Cross had already testified and was not shown to be unavailable, there was no reasonable neces-

sity to admit her hearsay statements made to Daley. *In re Jason S.* was a parental rights termination case where statements by the abused child made out-of-court to school personnel and social workers about physical abuse were offered into evidence. The hearsay statements of Jason failed to establish the necessity requirement of *State* v. *Sharpe,* supra, because Jason had already testified about who abused him and how he was abused. There was no need for the admission of Jason's hearsay statements about physical abuse because "[t]he facts contained therein could not have been lost because the declarant recounted them to the court himself." *In re Jason S.,* supra, 106.

In the present case, Cross did not testify about any argument with the defendant or that he left before her. She did testify that she had been drinking heavily that evening. Daley's testimony was relevant to show that at the time of her statement Cross selectively chose to omit certain facts from it. Cross' omissions from her statement contradict the inference that because she was drinking and lacked sleep she did not accurately recall what occurred that evening. Her sworn police statement was entered into evidence because of her inability to remember what occurred at the time of this incident. Cross' out-of-court assertion that she had argued with the defendant and that he had left before she left would have been lost because of her inability to remember it had it not been introduced through Daley's testimony. The admission of Cross' hearsay statements was necessary in this case because of her inability to remember any details about this incident. Cross testified, "I did not think I would be coming in here, so I have not been repeating the events of the evening since then. So I have no idea other than what is on my statement as to what took place." This indicates that even had Cross been recalled to testify she would not have been able to remember her statements

to Daley about omitting certain facts from her sworn statement. Therefore, Cross' availability is irrelevant because her statements could not have been obtained from the same or another source besides Daley. The court correctly concluded that the state has satisfied the reasonable necessity element as explained in *State v. Sharpe*, supra. Thus, this case is distinguishable from *In re Jason S.*, supra, because evidence of the same value could not have been obtained from any other source besides Daley.

We must next determine whether Cross' hearsay statements were "supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." *State v. Sharpe*, supra, 664. When making her statement, Cross recognized that any reference to her heavy drinking could subject her to criminal liability because she drove home from the club and also drove from East Hartford after she brought the defendant to get his car. She realized that this was against her penal interest. The statement about having an argument with the defendant was not against Cross' interest. Cross recognized that this could be damaging to the defendant who was her boyfriend at the time of the statement to Daley. These statements were made just after this incident and concerned matters within Cross' personal knowledge. Cross' statements contained sufficient indicia of reliability and trustworthiness to satisfy this element of the residual of hearsay exception.

"The court has broad discretion to determine that hearsay evidence is nonetheless admissible because it is clearly necessary and relevant to the resolution of issues." *State v. Tyson*, 23 Conn. App. 28, 35, 579 A.2d 1083 (1990). The fact that the defendant left the club before Cross was relevant to the resolution of how much time the defendant had to commit the sexual assault. At that point, the defendant had not testified

about his involvement with the victim. According to Cross' sworn statement, she was with the defendant until last call at the club which occurred at approximately 1:30 a.m. After failing to locate the defendant, she drove to his apartment and found him lying in bed at approximately 2 a.m. Cross' statement about an argument and the defendant's leaving without her shows that they could have been separated for more than thirty minutes. The trial court did not abuse its discretion when it admitted Cross' hearsay statements because they were necessary to the resolution of issues in this case. The court correctly admitted Cross' statements under the residual hearsay exception. The discrepancy between Daley's memory and his written report goes to the weight accorded to the testimony and not to its admissibility concerning the reliability of the hearsay statements. On the basis of this finding, we need not address whether Cross' statements were also admissible under the state of mind hearsay exception.

Furthermore, the state argued that, because the defendant in his direct examination of Daley brought out the fact that Cross kept certain facts out of her statement, it was entitled to inquire about these omissions. "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." (Citations omitted.) *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986).

The defendant called Daley to challenge Cross' sworn statement about her recollection of this incident. The

sworn police statement by Cross had been admitted as a prior recorded recollection because of her inability to remember events that occurred during the evening of the sexual assault. Daley's response, elicited by the defendant, that Cross wanted certain facts kept out of her sworn statement indicated that it might not be complete and accurate. The validity of Cross' sworn statement was called into question by Daley's response. The state had to inquire about the omitted facts to show how they affected the validity of Cross' sworn statement. Therefore, the court did not abuse its discretion by allowing Daley to testify about Cross' hearsay statements. Id.

## IV

We refuse to review the defendant's final claim that the assistant state's attorney's failure to disclose to the defendant that there was a discrepancy between Daley's written report and his actual recollection of what Cross said during her statement violated the constitutional, statutory and Practice Book rules concerning the disclosure of exculpatory information. The defendant did not include this claim in his statement of issues of his brief. The defendant's attempt to develop this claim in a single footnote violates Practice Book § 4065 (d) which requires that a brief shall contain "[t]he argument, divided under appropriate headings into as many parts as there are points to be presented . . . ." See *State* v. *Reddick,* 15 Conn. App. 342, 343, 545 A.2d 1109, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988). In *State* v. *Reddick,* supra, we refused to review three of the defendant's claims that although included in his preliminary statement of issues were argued by way of footnotes. An improperly briefed issue is considered abandoned. *State* v. *Gaines,* 196 Conn. 395, 397–98 n.2, 493 A.2d 209 (1985). The defendant's clear violation of the rules of practice warrants our refusal to review this claim.

The judgment of conviction of assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and threatening in violation of General Statutes § 53a-62 (a) (1) is reversed and the case is remanded with direction to render judgment of not guilty of those charges. The judgment of conviction on the three remaining counts are affirmed.

In this opinion FREEDMAN, J., concurred.

LANDAU, J., dissenting in part and concurring in part. I respectfully dissent from the portion of the majority opinion reversing the defendant's conviction of assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and threatening in violation of General Statutes § 53a-62 (a) (1). The majority concludes that the amendment to the defendant's information after the completion of jury selection, substituting subdivision (1) of § 53a-61 (a) for subdivision (2) of that statute and substituting subdivision (1) of § 53a-62 (a) for subdivision (3) of that statute resulted in charging an additional or different offense and thereby implicitly prejudiced the defendant's defense because he lacked proper notice of the new charge. I agree with the majority's conclusion that the amendment resulted in charging the defendant with an additional or different offense, but conclude that the defendant was not prejudiced by the amendment and that his conviction should be upheld.

" 'After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information . . . at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced . . . .' Practice Book § 624; *State* v. *Jacobowitz*, 182 Conn. 585, 590, 438 A.2d 792 (1981); *State* v. *Ignatowski*, 10 Conn. App. 709, 714, 525 A.2d 542, cert. denied, 204 Conn. 812, 528 A.2d

1157 (1987); *State* v. *Cole,* 8 Conn. App. 545, 550, 513 A.2d 752 (1986). 'The state's right to amend must be limited to substitutions that do not charge the defendant with an additional or different offense because the defendant has a constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself.' *State* v. *Jacobowitz,* supra, 590." *State* v. *Welch,* 25 Conn. App. 270, 273, 594 A.2d 28, cert. granted, 220 Conn. 924, 598 A.2d 366 (1991). The due process concerns of Practice Book § 624 are aimed at protecting "a defendant's right to fair and adequate notice of the charges against him so as to afford him an opportunity to prepare an adequate defense." *State* v. *Parker,* 25 Conn. App. 619, 622, 595 A.2d 939 (1991), quoting *State* v. *Cole,* supra.

As a threshold for permitting amendments to an information, the state must demonstrate good cause for the amendment. See Practice Book § 624. Once the state has done this, the defendant bears the burden of demonstrating that there is a different or additional offense being charged *and* that he is prejudiced by this amendment. Although Practice Book § 624 is not a model of clarity, I conclude that the defendant bears this burden because to conclude otherwise would require the state to prove two negatives, (1) that a different or additional offense was *not* charged and (2) that the defendant will *not* be prejudiced, an impracticable and Sisyphean, if not impossible task. See, e.g., *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 516, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). In *Griffin Hospital,* the defendant commission cut $160,000 from the hospital budget on the ground that the hospital had adequate "in house expertise, the expense of which is already in the hospital's budget, to develop the majority of the plan." The trial court concluded that the commission's finding of ade-

quate expertise within the hospital to develop the long range plan was unsupported by the evidence. On appeal, the commission argued that the trial court acted improperly in not placing the burden on the hospital to prove that its management personnel did not possess the requisite expertise. The Supreme Court disagreed and concluded that "[t]he hospital could not reasonably have been expected to prove the negative, i.e., that its management personnel were inadequate to perform the proposed functions"; id., 516; and that the trial court properly placed the burden of proving that the hospital management personnel did not possess the requisite expertise on the commission.

On appeal, the party challenging the trial court action, in this case the defendant, bears the burden of demonstrating that the trial court acted improperly. See *State* v. *Bergin,* 214 Conn. 657, 679, 574 A.2d 164 (1990) (defendant failed to show how he would be prejudiced by an amendment to the information, pursuant to Practice Book § 623, prior to commencement of trial). In order for the defendant to prevail on his claim he must prove, not only that a different or additional offense was charged by the amendment, but also that the amendment prejudiced the preparation of his defense. I conclude that the defendant has failed to sustain his burden of proof as to this second element.

The outcome of this case, regarding the issue of prejudice, I would argue, is guided by our Supreme Court decision in *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980). In *Wallace,* the state amended the defendant's information after the commencement of trial by deleting subdivision (2) of General Statutes § 53a-134 (a) and substituting in its place subdivision (4) of the same statute.[1] The court concluded that "the

---

[1] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission

amended information did not charge an additional or different offense. Both the original and amended information charged the defendant with the same crime of robbery in the first degree. Moreover, since the defendant's defense at the trial was one of alibi, no substantive rights of the defendant were prejudiced. The defendant did not dispute the commission of the crime charged, he simply claimed that he was not the one who committed it." Id., 239.

The majority attempts to distinguish *Wallace* on the grounds that (1) the statute at issue in that case is different from the statutes at issue in this case because all subdivisions of General Statutes § 53a-134 (a) require the same mental state, but each subdivision of the statutes at issue in the subject case requires a different mental state and (2) the trial court found that the amendment did not charge the defendant with a different or additional offense. The majority concludes that the issue of prejudice to the defendant's preparation of his defense need be addressed only if no additional or different offenses are charged. With respect to the prejudice created by the amendment, the majority, upon a reading of *Wallace*, concludes that the defendant in that case was not prejudiced by the amendment because he relied on an alibi defense and therefore did not dispute whether the robbery for which he was convicted was committed as charged in the original information (by the use of a deadly weapon) or as charged in the amended information (by the threat of the use of a firearm). In this case, because of its conclusion that the amendment charged the defendant with different or additional offenses, the majority never reaches the

of the crime . . . he or another participant in the crime . . . (2) is armed with a deadly weapon; or . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

prejudice prong of Practice Book § 624. I disagree with their failure to reach this issue.

Regarding the issue of prejudice, I believe that the present case presents a scenario identical to that presented in *Wallace*. In both cases, the theories of defense presented at trial were wholly unrelated to and unaffected by the context of the amendments. In *Wallace*, the amendment involved the means by which the offense was perpetrated while the theory of defense was alibi—that the defendant was elsewhere at the time the crime was committed. In this case, while the defendant did not argue that he was in another place at the time the crime was committed, his defense at trial was that the victim consented to the sexual intercourse, and that this consent negated any need for an assault or threat, and, thus, that these offenses were never committed. His theory of defense was not that he did not commit the offense with the charged state of mind. Thus, as in *Wallace*, where the specific conduct alleged did not implicate the defendant's alibi theory of defense, the particular state of mind charged in the information here did not implicate the defendant's theory of defense that he did not commit the charged acts, regardless of the accompanying mental state. The defendant has failed to demonstrate how this amendment prejudiced his opportunity to prepare an adequate defense; see *State* v. *Parker*, supra; and, therefore, how the due process concerns of Practice Book § 624 have been implicated.

I would, therefore, affirm the defendant's conviction of assault in the third degree and threatening.