## State of Connecticut *v.* Richard J. Tanzella
## (14627)

Peters, C. J., Callahan, Borden, Berdon and Norcott, Js.

Argued March 26—decision released July 27, 1993

602

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John M. Malone,* assistant state's attorney, for the appellant (state).

*Jon L. Schoenhorn,* for the appellee (defendant).

BORDEN, J. The certified issue in this appeal is whether, pursuant to Practice Book § 624,[1] the trial court properly permitted the state to amend a criminal information after the commencement of trial. The defendant, Richard J. Tanzella, was convicted after a jury trial of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70,[2] and one count each of assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[3] threatening

[1] Practice Book § 624 provides: "—— ——SUBSTANTIVE AMENDMENT AFTER COMMENCEMENT OF TRIAL

"After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

[2] General Statutes § 53a-70 provides in pertinent part: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY . . . . (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[3] General Statutes § 53a-61 provides in pertinent part: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he

in violation of General Statutes § 53a-62 (a) (1),[4] and unlawful restraint in the first degree in violation of General Statutes § 53a-95.[5] He appealed to the Appellate Court from the judgment of conviction. The Appellate Court affirmed the judgment of conviction on the first, second and fifth counts, namely, both counts of sexual assault in the first degree and the count of unlawful restraint. With regard to the third and fourth counts, namely, assault in the third degree and threatening, however, the Appellate Court reversed the judgment of conviction and ordered a judgment of acquittal[6] because the trial court had improperly permitted the state to amend the information by alleging different or additional offenses in violation of Practice Book § 624. *State* v. *Tanzella,* 28 Conn. App. 581, 590, 613 A.2d 825 (1992). We granted the state's petition for

recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ."

[4] General Statutes § 53a-62 provides in pertinent part: "THREATENING: CLASS A MISDEMEANOR. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience. . . ."

[5] General Statutes § 53a-95 provides in pertinent part: "UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury. . . ."

[6] The Appellate Court's rescript, ordering not a new trial but a judgment of acquittal, was correct under the then prevailing law. See *State* v. *Jacobowitz,* 182 Conn. 585, 594, 438 A.2d 792 (1981). Subsequently, however, we decided in *State* v. *Welch,* 224 Conn. 1, 5, 615 A.2d 505 (1992), that the proper remedy for a violation of Practice Book § 624 is not a judgment of acquittal but a new trial. Because we conclude that the judgment of conviction on the third and fourth counts should be reinstated, we need not address the propriety of the Appellate Court's rescript under *Welch.*

certification to appeal regarding the third and fourth counts[7] and now reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts: "On July 16, 1988, the victim went to the Club Car, a Hartford nightclub, to meet some friends. At approximately 1:30 a.m. on July 17, she left the club by herself and walked to her car. As she was walking to her car, the defendant approached her and began a conversation. The defendant identified himself and asked if she would give him a ride to his house in Manchester. The victim initially refused but then changed her mind after the defendant emptied his pockets to show he did not have a weapon. The victim examined the defendant's driver's license after he emptied his pockets. She then drove the defendant to Manchester and stopped at a school parking lot near his apartment.

"According to the victim's testimony, when they arrived at the school parking lot, the defendant grabbed her and turned off her car's engine. The defendant told the victim to remove her pants but she attempted to struggle with him. She was able to restart the car but again he removed the keys and threatened her with death if she kept resisting. During the course of the struggle, the defendant punched the victim in the head and she bit him on the forearm. The defendant then sexually assaulted the victim and forced her to engage in sexual intercourse. After intercourse, the victim drove the car, following the defendant's directions,

---

[7] We granted certification to appeal limited to the following issue: "Did the amendments of the counts against the defendant constitute different offenses under Practice Book § 624 and, if so, whether the trial court properly held that the defendant was required to make a showing that his substantive rights would be prejudiced?" *State* v. *Tanzella*, 224 Conn. 910, 617 A.2d 169 (1992).

toward his apartment. While driving, the victim saw a house with its lights on and drove into the driveway. She grabbed her keys and fled from the car to a side door of the house. She began to bang on the door and saw that the defendant had exited her car. The defendant ran up the street and the victim returned to her car. As she drove toward a hospital, the victim encountered a Manchester police officer and reported that she had been raped.

"After meeting with the victim and further investigation, the police went to the defendant's apartment. The police officers told the defendant he was under investigation for sexual assault. The defendant denied any knowledge of a sexual assault and stated that he had been out with his girl friend all night. The defendant's girl friend, Virginia Cross, was also at his apartment when the police arrived. The police arrested the defendant and took him into custody. The defendant telephoned Cross from the police station. A police officer who overheard the defendant's conversation with Cross testified that he stated, 'You are driving a nail into my coffin.' According to this officer, the defendant also told Cross to change her story and tell the police that she did not remember anything because she suffered from blackouts. The police photographed a small bitemark on the defendant's forearm.

"The defendant testified that after spending the evening with Cross at a club in Hartford, he became separated from her as the club was closing. The defendant stated that he and Cross were getting along very well and had not been fighting that evening. The defendant began to look for Cross outside of the club and during this search he met the victim. According to the defendant's version, the victim offered to drive him home and during the drive placed her hand on his knee. At the school parking lot, they kissed and then had consensual sexual intercourse. After this, the victim asked

if she could go to the defendant's apartment with him. The defendant refused because his girl friend was at his apartment. The defendant told the victim that 'having sex in a parking lot is not a way to start a relationship for the future.' The victim then drove the defendant to a house whereupon she exited the car and walked into the house. The defendant exited the car and took the victim's pants and nylons with him. He deposited the defendant's pants and nylons in a dumpster near his apartment." *State* v. *Tanzella,* supra. 583–85.

The state charged the defendant in a five count information. After the jury had been selected and sworn, the trial court clerk read the information to the jury. During the reading, the state's attorney noticed errors in the third and fourth counts of the information. Although the third count charged the defendant with assault in the third degree in violation of General Statutes § 53a-61 (a) (2), the state's attorney had intended to charge a violation of subsection (a) (1) rather than (a) (2). Also, the fourth count charged the defendant with threatening in violation of General Statutes § 53a-62 (a) (3); the state's attorney, however, had intended to charge a violation of subsection (a) (1) rather than (a) (3).

Relying on Practice Book § 624, the state's attorney moved to amend the information to correct the errors, and the defendant objected. The trial court granted the motion and the state amended the information accordingly. The third count of the amended information charged the defendant with assault in the third degree in violation of § 53a-61 (a) (1) and the fourth count charged him with threatening in violation of § 53a-62 (a) (1). The trial court offered the defendant the option of a continuance to remedy any possible surprise, but the defendant declined. The defendant was subsequently

convicted on all five counts of the amended information. The defendant's appeal to the Appellate Court and the state's appeal to this court followed.

I

The state first claims that the Appellate Court improperly concluded that the amendment to the information violated Practice Book § 624 by charging different or additional offenses. We agree.

The amendment to the third count of the information, the charge of assault in the third degree, changed the allegation from an assault in which the defendant had recklessly caused serious physical injury to an assault with intent to cause physical injury. The Appellate Court held that the amended charge of assault in the third degree constituted a different offense because it changed: (1) the requisite mental state from recklessness to intent; and (2) the level of harm from serious physical injury to physical injury. Id., 587–88.

The amendment to the fourth count, the charge of threatening, changed the proscribed conduct from threatening in reckless disregard of terror or inconvenience to threatening by intentionally placing a person in fear of imminent physical injury. The Appellate Court concluded that the amended charge of threatening constituted a different offense because it changed: (1) the mental state from recklessness to intent; and (2) the nature of the harm. Id., 590.

Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § 623. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 624.

Section 624 permits amendments to an information after trial has commenced provided "no additional or different offense is charged and no substantive rights

of the defendant would be prejudiced." We agree with the decision of the Appellate Court in *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 732 (1986), that for purposes of § 624, a trial begins with the voir dire. In this case, the voir dire was complete and the jury had been sworn and read the information before the state's attorney moved to amend. Thus, trial had commenced and § 624 applied.

We disagree, however, with the Appellate Court's conclusion that the amended charges created different or additional offenses.[8] Practice Book § 624 is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. *State* v. *Jacobowitz,* 182 Conn. 585, 590, 438 A.2d 792 (1981). The importance of notice is the reason that § 624 defines the commencement of trial as the voir dire rather than the swearing-in of the jury: the defendant needs to know the nature of the accusations against him in order to question jurors effectively. *State* v. *Cole,* supra, 551.

Because § 624 is primarily a notice provision, we decline the defendant's invitation to determine whether offenses are different or additional by comparing the elements of the respective offenses. Although we compare elements to determine if offenses are the same for purposes of double jeopardy; see, e.g., *State* v. *Greco,* 216 Conn. 282, 291, 579 A.2d 84 (1990); such an analysis is inappropriate here. For purposes of § 624, the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense. We conclude that in this case the amended information did not charge the defendant with different or additional offenses that would violate his right to notice under § 624.

---

[8] Practice Book § 624 also requires that the state show good cause for the amendment. The defendant did not argue at trial nor claim on appeal that the amendments were not made for good cause.

Our decision is guided by *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980), and *State* v. *Secore,* 194 Conn. 692, 485 A.2d 1280 (1984). In *Wallace,* the defendant was charged with the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). Just before the state completed its case-in-chief, the trial court permitted the state to amend the information by deleting subsection (a) (2) of § 53a-134 and substituting in its place subsection (a) (4).[9] *State* v. *Wallace,* supra, 238. The jury subsequently found the defendant guilty of the crime charged in the amended information.

Under the subsection originally charged in *Wallace,* § 53a-134 (a) (2), a person is guilty of robbery in the first degree if he "is armed with a deadly weapon." Under the amended charge, subsection (a) (4), a person is guilty of robbery in the first degree if he "displays or threatens the use of what he represents by his words or conduct to be a . . . firearm . . . ." The amended charge differed from the original charge in two factual respects.

First, the original charge differed from the amended charge regarding the item that the defendant must have had on his person to be found guilty of the offense. The original subsection referred to a deadly weapon. The amended subsection, however, referred to anything that the defendant represented to be a firearm, even if it were not capable of actually firing a shot. Thus, the amended charge required the state to prove the presence of an item different from that referred to in the original charge. Second, the original and amended

[9] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime . . . he or another participant in the crime . . . (2) is armed with a deadly weapon . . . or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

charges differed with respect to the actions they proscribed. Under the original subsection, the defendant needed only to be armed with a deadly weapon to be found guilty. He need not have displayed or threatened to use the weapon. The amended subsection, however, only pertained to one who actually displayed or threatened to use the item involved. Thus, the amended charge required the state to prove different conduct from the original charge.

Nevertheless, we concluded in *Wallace* that the amended information did not charge a different or additional offense. Both the original and the amended informations charged the defendant with the crime of robbery in the first degree. We concluded that the amended charge was the same as the original charge for purposes of Practice Book § 624. *State* v. *Wallace*, supra, 239.

We considered a related issue in *State* v. *Secore*, supra. The defendant in *Secore* was charged with sexual assault in the first degree under General Statutes (Rev. to 1979) § 53a-70 (a).[10] A grand jury originally indicted him under subsection (a) (1) for sexual assault in the first degree "by the use of force." The state later replaced the grand jury indictment with an informa-

[10] General Statutes (Rev. to 1979) § 53a-70 provides in pertinent part: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ."

The defendant in *State* v. *Secore*, 194 Conn. 692, 485 A.2d 1280 (1984), was originally indicted under § 53a-70 (a) (1) for first degree sexual assault committed by the use of force. At the time of the indictment, however, § 53a-70 did not contain a subsection (a) (1) and the indictment read inconsistently with the statute. We noted that the drafting error had technical significance only and did not prejudice the defendant or deprive him of notice of the charges against him. Id., 694 n.1.

tion alleging a violation of subsection (a) (2), namely, sexual assault in the first degree "by the threat of use of force." The precise procedural issue in that case was not whether Practice Book § 624 permitted the amendment of an information. The question related to whether the substitution of the information for the indictment violated the requirement that the defendant be indicted by a grand jury.[11] As a preliminary matter, however, the court had to determine if the original and amended charges were the same. If they were, then the requirement of an indictment would have been satisfied by the original charge.

We concluded in *State* v. *Secore,* supra, 698, that the language of § 53a-70 (a) did not divide the statute into separate crimes; rather, it defined a single crime, sexual assault in the first degree, which could be committed in two separate ways. The first way to commit sexual assault in the first degree was described in subsection (a) (1) as "the use of force." The second way to commit the crime was described in subsection (a) (2) as "the threat of use of force." By substituting subsection (a) (2) for (a) (1), the state changed the conduct it would have to prove in order to convict, but it did not charge a different substantive offense.

Underlying the court's reasoning was the requirement of notice. The purpose of the indictment was to give the defendant sufficient notice of the charges against him so that he could properly prepare his defense. Id., 701, citing *Spencer* v. *Texas,* 385 U.S. 554, 567, 87 S. Ct. 648, 17 L. Ed. 2d 606, reh. denied, 386 U.S. 969, 87 S. Ct. 1015, 18 L. Ed. 2d 125 (1967). Because the defendant in *Secore* made no claim of prejudice or unfair surprise caused by the substitute infor-

[11] The defendant was required to be indicted because he faced a potential life sentence for being a persistent felony offender. General Statutes §§ 53a-40 and 54-45 (b).

mation, the court held that he had been adequately notified of the charges against him, even though the original and substituted subsections described somewhat different conduct. *State* v. *Secore,* supra.

*Wallace* and *Secore* do not stand alone. In *State* v. *Sullivan,* 11 Conn. App. 80, 525 A.2d 1353 (1987), the Appellate Court upheld the amendment, after voir dire, of an information alleging a violation of General Statutes § 53-21,[12] namely, injury or risk of injury to, or impairing the morals of, children. A person can violate the pertinent part of this statute by engaging in two distinct courses of conduct: (1) placing a child in a situation likely to impair its morals; or (2) acting in a way likely to impair the child's morals. The original information charged only the first course of conduct, and the amended information charged both courses of conduct. Id., 87. The Appellate Court concluded that the statute described two ways of committing the same crime, and the state's belated decision to allege both ways did not violate Practice Book § 624. Id., 88–90. Under the Appellate Court's analysis, as long as the state adequately notified the defendant of the charges he faced, the amendment was permissible.

In light of this case law, we conclude that the subsections of the statutes in question do not constitute different crimes for purposes of Practice Book § 624. Like the statutes in *Sullivan* and *Secore,* they describe alternative means of committing a single crime. The first of the two amendments pertained to the charge of violating General Statutes § 53a-61 (a), assault in the

---

[12] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

third degree. The original subsection, (a) (2), required the state to prove that the defendant had recklessly caused serious physical injury. The substituted subsection, (a) (1), required the state to prove that the defendant had intentionally caused physical injury. Consequently, the Appellate Court correctly observed that the amendment changed the requisite mental state from intent to recklessness and changed the requisite harm from serious physical injury to physical injury.

In our view, however, the substituted charge was not additional or different from the original charge under Practice Book § 624. The substituted charge specified a more culpable mental state and a lesser degree of harm; the original charge specified a less culpable mental state and a greater degree of harm. Both charges required the state to prove that the defendant, with a significantly culpable mental state, inflicted some degree of physical injury on another person. These are not different crimes but simply different means of committing the same crime, namely, assault in the third degree. Consequently, the amendment to the third count did not violate Practice Book § 624.

The same is true of the amendment to the fourth count. A person is guilty of threatening under the originally charged subsection of General Statutes § 53a-62, namely, (a) (2), if he threatened to commit a crime of violence in reckless disregard of the risk of terror. A person is guilty of the substituted charge, subsection (a) (1), if he intentionally placed or attempted to place another person in fear of imminent serious physical injury. This amendment also changed the requisite mental state from recklessness to intent, and substituted a different type of harm. Nevertheless, the two subsections are not so dissimilar as to constitute different offenses. Both subsections refer to one person, with a culpable state of mind, placing another person in fear of harm. They amount to two methods of committing

the same crime to the same degree. Consequently, the amended information adequately notified the defendant of the charge against which he was required to defend himself. It did not charge additional or different offenses.[13]

## II

An amendment to an information is proper under Practice Book § 624 only if "no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." Having determined that the amendments to the information did not charge additional or different offenses, we now consider whether the amendments prejudiced the defendant's substantive rights. The state claims that the judgment of the Appellate Court must be reversed because the defendant's substantive rights were not prejudiced. We agree.

If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that "no substantive rights of the defendant would be prejudiced." Practice Book § 624. Like any other party petitioning the court, the state must demonstrate the basis for its request. Under § 624, the state must show: (1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced. This allocation of burden encourages the

---

[13] We do not suggest, however, that all subsections of a single statutory section necessarily define the same crime or alternative methods of committing the same crime for purposes of Practice Book § 624, regardless of the degree of difference between the conduct proscribed by each. It may be that there are cases in which the different subsections proscribe conduct so dissimilar to each other that they may constitute additional or different offenses for purposes of § 624. This, however, is not such a case. We leave that question to a case that properly presents it.

state to prepare its case carefully because it bears the burden of justifying subsequent adjustments.[14]

In this case, however, we agree with the trial court's implicit conclusion that the defendant was not prejudiced by the amendments to the information.[15] The amendments changed the mental states and types of harm for the charges of assault and threatening. The defendant's defense, however, was that the victim had consented to the intercourse and that no threat or force had taken place. In effect, his defense to all the charges was that this had been a voluntary, consensual encounter from beginning to end. The state's theory of the case, to the contrary, was that although the victim had voluntarily agreed to give the defendant a ride home, the entire episode thereafter was dominated by the defendant's use of threats and force.

---

[14] We need not decide in this case whether a defendant could prevail on an appellate record that is silent with regard to whether his substantive rights were prejudiced. Nor need we decide whether, in the face of a proposed amendment pursuant to Practice Book § 624, a defendant may prevail by simply remaining silent at trial, or whether, on the contrary, he has some initial burden of suggesting possible prejudice.

This case does not present either scenario. As we explain in footnote 15, this record is not silent with regard to possible prejudice, because the lack of effect of the amendment is apparent from the record. Furthermore, the defendant did not remain silent about potential prejudice in this case.

[15] The trial court did not make an express finding of whether the defendant was prejudiced and the Appellate Court did not directly address the issue. The defendant argued at trial that he had been prejudiced because he had subpoenaed hospital records to contradict the state's allegation, in the original charge of assault in the third degree under General Statutes § 53a-61 (a) (2), that he had seriously injured the victim. This argument, however, was peripheral to his defense and was implicitly rejected by the trial court when it ruled to permit the amendments. Moreover, an amendment to an information does not necessarily prejudice a defendant's substantive rights within the meaning of Practice Book § 624 simply because the defendant may have evidence available to contradict a factual allegation of the original charge, and, as a result of the amendment, he no longer faces that particular factual allegation.

On the one hand, if the jury had believed that the victim had in fact consented or that there was a reasonable doubt about whether threat or force was involved, the defendant would have been acquitted on either the original or the amended offenses. The amendments would have been irrelevant. On the other hand, if the jury had believed beyond a reasonable doubt that the victim had not consented, the defendant would have been equally liable under both the original and amended charges. Again, the amendments would have been irrelevant. The amendments therefore did not prejudice the defense because the effect of the amendments was logically distinct from the defense asserted. Moreover, nothing in the record suggests that the defendant would have presented a different defense if the amended offenses had been alleged at the outset, or that the defendant suffered any unfair surprise that deprived him of substantive rights. See *State* v. *Scognamiglio,* 202 Conn. 18, 22–23, 519 A.2d 607 (1987).

Once again we are guided by *State* v. *Wallace,* supra. In *Wallace,* the state deleted the charge of robbery by a person armed with a deadly weapon and replaced it with a charge of robbery by a person displaying or threatening the use of what he represents to be a firearm. The defendant, however, claimed an alibi. We concluded that the defendant had not been prejudiced because the amendments regarding the means of the commission of the offense were unrelated to his defense that he was not the one who committed it. Id., 239. If there is such a disparity between the modification of the charge and the proposed defense, the defendant cannot have been prejudiced. See *State* v. *McKnight,* 191 Conn. 564, 587, 469 A.2d 397 (1983) (substitute information alleging that a different participant in a robbery, not the defendant, threatened to use a firearm did not prejudice the defendant whose defense was alibi); *State* v. *Anderson,* 211 Conn. 18, 31, 557 A.2d

917 (1989) (amendment to a count of sexual assault substituting anal intercourse for oral intercourse did not prejudice the defendant whose defense was alibi). The defendant's claim in this case is nearly identical to the claim we rejected in *State* v. *Franko,* 199 Conn. 481, 508 A.2d 22 (1986). In *Franko,* the defendant claimed that the trial court had unconstitutionally enlarged the offense with which he was charged, sexual assault in the first degree, by instructing the jury that it could convict him if it found that he either used force or threatened to use force. Id., 488. Although the statute under which he was charged created liability for sexual assault by either force or threat of force, the state, in its information, had alleged only the use of force. The defendant argued, however, that the intercourse had been consensual. We rejected his argument because if the jury had believed that the victim consented, it would have been obligated to acquit the defendant under either theory of liability. Consequently, the defendant could not have been prejudiced by the trial court's instructions. Id., 491.

We see no reason to depart from such precedent. The defendant could not have been prejudiced because his theory of defense was logically distinct from the difference between the original and amended charges. The fact that he did not request a continuance, even though it was offered to him, confirms our conclusion that he was not prejudiced. Finally, we note that the original and amended offenses carry the same potential penalty. Thus, the amendments did not put the defendant at risk of receiving a greater sentence.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion PETERS, C. J., CALLAHAN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I agree with the Appellate Court that the trial court improperly allowed the state to amend the third and fourth counts of the information. *State* v. *Tanzella,* 28 Conn. App. 581, 587–90, 613 A.2d 825 (1992).

Accordingly, I respectfully dissent.