### STATE OF CONNECTICUT *v.* RONALD A. RUTAN
### (11054)

PETERS, PARSKEY, SHEA, GRILLO and DALY, Js.

Argued June 12—decision released September 4, 1984

*Joseph Dimyan,* for the appellant (defendant).

*Andrew Wittstein,* assistant state's attorney, with whom, on the brief, were *Dennis A. Santore,* state's attorney, and *Carl J. Schuman,* assistant state's attorney, for the appellee (state).

PETERS, J. The principal issue presented by this appeal is whether the state presented sufficient evidence to support the defendant's conviction of burglary and attempted larceny. The defendant, Ronald A. Rutan, was charged by information with burglary in the third degree, in violation of General Statutes § 53a-103,[1] and with criminal attempt to commit larceny in the second degree, in violation of General Statutes § 53a-123.[2] The jury found the defendant guilty on both counts and the trial court rendered judgment in accordance with the jury verdict. The defendant appeals from the judgment of conviction.

The defendant raises three issues on appeal. He claims that the trial court erred (1) in denying his motion for judgment of acquittal at the close of the state's case; (2) in admitting evidence procured by dog tracking without a proper foundation; and (3) in failing to charge the jury that they could consider the dog tracking evidence only for purposes of corroboration. We find no error.

I

The defendant's first claim of error challenges only the sufficiency of the evidence adduced by the state in its case in chief. Although the defendant raised his claim of insufficient evidence on three separate occasions in the trial court—at the close of the state's case, at the

[1] "[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein. . . ."

[2] "[General Statutes] Sec. 53a-123. LARCENY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another. . . ."

close of all the evidence and after the jury had returned its verdict of guilty—he has appealed only from the trial court's denial of his first motion for acquittal. At oral argument the defendant expressly waived any objection to the sufficiency of all the evidence.

Before we can reach the merits of the defendant's challenge to the sufficiency of the state's case, we must determine whether such a claim is reviewable at all, in light of the defendant's introduction of evidence in his own behalf and his concession that the evidence as a whole was sufficient to support his conviction. The defendant urges us to reconsider the waiver rule which forecloses appellate review of the sufficiency of the state's case whenever the defendant has elected to introduce evidence of his own. *State* v. *Brown,* 172 Conn. 531, 532–33, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977); *State* v. *L'Heureux,* 166 Conn. 312, 324, 348 A.2d 578 (1974); *State* v. *Boucher,* 119 Conn. 436, 437, 177 A. 383 (1935); Maltbie, Conn. App. Proc. (2d Ed. 1957) § 212.

Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the state's case. The waiver rule, therefore, forces the defendant to choose between waiving the right to a defense and waiving the right to put the state to its

proof. It is doubtful whether a criminal defendant should be placed in such a dilemma.

Our previous cases have applied the waiver rule without any discussion of the rule's effect on the defendant's right to have the state prove his or her guilt beyond a reasonable doubt. *State* v. *Brown,* supra, 532–33; *State* v. *Ralls,* 167 Conn. 408, 415 n.2, 356 A.2d 147 (1974); *State* v. *Dubina,* 164 Conn. 95, 101, 318 A.2d 95 (1972); *State* v. *Anderson,* 152 Conn. 196, 198, 205 A.2d 488 (1964); *State* v. *Boucher,* supra, 437. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 704, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Our case law arose under former rules of practice which made no distinction between the motions for directed verdict in a civil trial and a criminal prosecution.[3] In our courts, as in other jurisdictions, the waiver rule was imported from the civil to the criminal sphere along with the motion for directed verdict itself. See *Cephus* v. *United States,* 324 F.2d 893, 896–97 (D.C. Cir. 1963); comment, "The Motion for Acquittal: A Neglected Safeguard," 70 Yale L.J. 1151, 1151–52 (1961); Maltbie, supra. Our current

---

[3] Practice Book, 1963, § 255 provided as follows: "Sec. 255. ——RESERVATION OF DECISION ON MOTION FOR DIRECTED VERDICT

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. After the acceptance of a verdict and within the time stated in Sec. 254 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury has been discharged from consideration of the case. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

rules of procedure,[4] however, reflect a heightened awareness of the constitutional differences between civil and criminal fact finding under which the survival of the waiver rule is doubtful.

We note that courts in a number of other jurisdictions have, in recent years, questioned the validity of the waiver rule. Although the majority of the federal courts still adhere nominally to the waiver rule; *McGautha* v. *California,* 402 U.S. 183, 215, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971), reh. denied, 406 U.S. 978, 92 S. Ct. 2407, 32 L. Ed. 2d 677 (1972); *United States* v. *Calderon,* 348 U.S. 160, 164 and n.1, 75 S. Ct. 186, 99 L. Ed. 202 (1954); *United States* v. *Keuylian,* 602 F.2d 1033, 1040–41 (2d Cir. 1979); 2 Wright, Federal Practice and Procedure (1982) § 463; the rule has come under increasing attack as incompatible with the constitutional requirement of due process that the prosecution must introduce sufficient evidence to justify a convic-

---

[4] Practice Book §§ 882 through 885, which took effect in 1978, provide as follows: "Sec. 882. ——MOTIONS FOR JUDGMENT OF ACQUITTAL

"Sec. 883. —— ——IN GENERAL

"Motions for a directed verdict of acquittal and for dismissal when used during the course of a trial are abolished. Motions for a judgment of acquittal shall be used in their place. After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty.

"Sec. 884. —— ——AT CLOSE OF PROSECUTION'S CASE

"If the motion is made after the close of the prosecution's case in chief, the judicial authority shall rule upon the motion before calling upon the defendant to present his case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so.

"Sec. 885. —— ——AT CLOSE OF EVIDENCE

"If the motion is made at the close of all the evidence in a jury case, the judicial authority may reserve decision on the motion, submit the case to the jury, and decide the motion either before the jury return a verdict or after they return a verdict of guilty or after they are discharged without having returned a verdict."

tion before the defendant may be required to respond. "One of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense. 'Ours is the accusatorial as opposed to the inquisitorial system. . . . Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation.' " *Cephus* v. *United States,* 324 F.2d 893, 895 (D.C. Cir. 1963), quoting *Watts* v. *Indiana,* 338 U.S. 49, 54, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949); see also *United States* v. *Lopez,* 576 F.2d 840, 842–43 (10th Cir. 1978); *United States* v. *Watkins,* 519 F.2d 294, 297 (D.C. Cir. 1975); *United States* v. *Bethea,* 442 F.2d 790, 792 n.4 (D.C. Cir. 1971); *United States* v. *Rizzo,* 416 F.2d 734, 736 n.3 (7th Cir. 1969); comment, "The Motion for Acquittal: A Neglected Safeguard," 70 Yale L.J. 1151 (1961); 2 Wright, supra, § 463; but see *United States* v. *Fearn,* 589 F.2d 1316, 1321 (7th Cir. 1978); *United States* v. *Perez,* 526 F.2d 859, 863–64 (5th Cir.), cert. denied, 429 U.S. 846, 97 S. Ct. 129, 50 L. Ed. 2d 118 (1976).

The New Jersey Supreme Court has noted in rejecting the waiver rule that "the application of the civil rule to criminal trials is open to the criticism that by force of a ruling, that was wrong when made, testimony that the defendant ought not to have been required to give at all may be laid hold of to sustain the wrongful ruling by which he was required to give it. This comes perilously near compelling the accused to convict himself . . . ." *State* v. *Bacheller,* 89 N.J.L. 433, 436, 98 A. 829 (1916). See also *State* v. *Simpson,* 64 Hawaii 363, 370–72, 641 P.2d 320 (1982); *Commonwealth* v. *Cote,* 15 Mass. App. 229, 240–41, 444 N.E.2d 1282

(1983); but see *State* v. *Brooks,* 103 Idaho 892, 903, 655 P.2d 99 (1982); *State* v. *Smith,* 332 So. 2d 773, 775–76 (La. 1976).

Accordingly, in an appropriate case, we may well conclude that the denial of a defendant's motion for acquittal at the close of the state's case may be assignable as error on appeal from a conviction, whether or not the defendant has introduced evidence in his or her own behalf. In this case, however, we need not decide that issue because, even if the defendant's claim were properly here, he could not prevail.

On its merits, the defendant's claim is a challenge to the sufficiency of the evidence at the end of the state's case. Our review of the state's evidence is limited to an inquiry " 'whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Haddad,* 189 Conn. 383, 387, 456 A.2d 316 (1983); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978).

The jury might reasonably have found the following facts. On the morning of March 26, 1981, State Police Trooper Robert Gavell was dispatched to a residence in Canaan in response to a silent burglar alarm. When Gavell arrived at the scene he observed a blond white male through the window. He then saw three white males run from the back of the house. The defendant, chased by Gavell, ran in a different direction from the other two men. The defendant soon escaped Gavell's chase into the woods behind the house. On inspection, Gavell found that the house had been ransacked, and a pile of valuables had been collected on the living room floor. An automobile registered to the defendant's fian-

cee was found parked on Johnson Road near the scene of the burglary. Dog tracking evidence indicated that someone had walked from the car to the house. The defendant had been in possession of his fiancee's car that day.

Trooper David Barger later found the defendant hitchhiking in the vicinity of the burglary, and turned the defendant over to Trooper Marjorie Kolpa. The defendant, who was wet and dirty, told Kolpa that he had been fishing and that his car had been towed or stolen. He told Trooper William Marchand that he had lost his fishing equipment when he fell in a swamp. Subsequently, in response to questioning about whom he had been with that day, the defendant told Trooper Fred Diggle that he would give the trooper two names if the trooper would release him on a promise to appear and give him a ride home to Shelton. The defendant did not expressly admit his participation in the burglary. Although Gavell could not identify the defendant as the man whom he had chased, the defendant fit the general description of the fleeing suspect. Police investigation failed to recover any lost fishing equipment.

The state's case was sufficient to meet its evidentiary burden. The defendant was far from his home in the vicinity of the burgled residence at the time of the offense. He fit the general physical description of one of the burglars. Dog tracking evidence linked the defendant's car to the victim's house. When questioned by police, the defendant gave a highly unlikely and uncorroborated account of his activities, and he later made incriminating statements concerning his possible companions. The jury was entitled to infer that the defendant had been one of the burglars.[5] The defendant cannot prevail on his first claim of error.

[5] Further, the defendant, himself, conceded at oral argument that following his own testimony the evidence was sufficient to support his con-

## II

The defendant's remaining two claims of error challenge the trial court's admission of evidence procured by dog tracking and the court's failure to give a limiting instruction to the jury regarding the use of that evidence. Neither claim has been properly preserved for review.

Under Practice Book § 3063, we may review only those claims that have been clearly raised below. In the trial court, the defendant not only failed to object, but affirmatively acquiesced in the admission of the testimony of Trooper Marjorie Kolpa concerning her dog tracking investigation. When the assistant state's attorney requested a trial court ruling that the proffered testimony would be admissible, the defendant's attorney responded "[o]kay."

Similarly, with respect to the claimed failure to charge upon the use of the dog tracking evidence, the defense counsel submitted no written request to charge as required by Practice Book § 852 and took no exception to the charge as given. Indeed, out of the jury's presence, he requested the court to clarify its charge on this issue and then thanked the judge for repeating the charge.

Neither of these claims implicates the defendant's constitutional right to a fair trial so as to require review under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant will not be heard to object on appeal to rulings that he requested or accepted at trial.

---

viction. In their testimony for the defense, the defendant and his wife presented essentially the same alibi as that described by the police witnesses who had testified previously for the state. Although the state's cross-examination of the defense witnesses revealed additional inconsistencies in the defendant's story, the defendant's presentation did not remedy any insufficiency in the state's case.

There is no error.

In this opinion the other judges concurred.