## STATE OF CONNECTICUT *v.* BILLY RODRIGUEZ
## (AC 21237)

Dranginis, Bishop and Daly, Js.

Argued February 22—officially released May 14, 2002

*Deborah G. Stevenson,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* special assistant state's attorney, with whom, on the brief, was *Robert M. Brennan,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Billy Rodriguez, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4),[1] larceny in the sixth degree in violation of General Statutes §§ 53a-125b (a)[2] and 53a-119,[3] and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[4] On appeal, the defendant claims that the court (1) improperly denied

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[2] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

[3] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[4] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

his motions for a judgment of acquittal at the close of the state's case-in-chief and at the close of evidence, and (2) improperly permitted the state to amend the substitute information. We affirm the judgment of the trial court.

The record discloses the following relevant facts. On July 29, 1999, at approximately 10 p.m., several teenagers, including Seamus Bradley, Victor Lima, Brandy Petrucci, Jared Sperry and Junior DeCosta, arrived at Shelton Park in Bridgeport. There, the teenagers engaged in conversation and listened to music on their car stereos for approximately twenty minutes, at which time three men, including the defendant, approached. Bradley noticed the men first and extended his hand, assuming that they were friendly. The men stood in front of Bradley for a moment and then two of them walked toward the vehicles that the teenagers had parked nearby. Only the defendant remained in front of Bradley, and he, seeking to divert Bradley's attention, shook Bradley's hand and ordered, "Don't make any noise, don't bring attention to you and . . . let me see your wallet." Bradley stood up, and the defendant attempted to punch him twice in the face. Bradley blocked the first punch, but the second punch struck the left side of his face, causing him to fall backward over a railing.

Meanwhile, the other two men, both armed with handguns, were attempting to steal two of the vehicles parked nearby. One of those men approached the driver's door of the red 1993 Honda Civic that Petrucci had driven to the park. The door was slightly ajar because Sperry recently had entered the Honda and still was inside changing a compact disc. The man thrust his handgun through the opening and pressed its barrel against Sperry's neck. The man ordered Sperry to "get in the passenger seat," and he told him "don't look at my face." Sperry complied.

Immediately thereafter, the defendant stopped attacking Bradley and ran toward the Honda. He dived into the vehicle through an open window, landed in the backseat and yelled, "Get the other car, get the other car." The third man, who was attempting to apprehend DeCosta in an effort to seize the keys to DeCosta's vehicle, relented and quickly entered the Honda. As the three men began to speed off, Sperry exited the vehicle through the passenger door.

Within minutes, Officer Angel Rivera of the Bridgeport police department arrived at the scene. The teenagers provided Rivera with a description of the defendant, the other men and the Honda. Rivera, along with other Bridgeport police officers, searched the vicinity but found nothing related to the incident.

The following morning, the Bridgeport police department received a telephone call indicating that the Honda had been seen in the backyard of 212 Seaview Avenue in Bridgeport. Officer Jose Luna and Officer James Sheffield were dispatched to that location and a search ensued, but the Honda no longer was there. While Luna and Sheffield were returning to their vehicles, the defendant, who was driving the Honda, turned onto Seaview Avenue and pulled up behind Luna's marked patrol car. As the officers approached the Honda, the defendant reversed direction, proceeded backward on Seaview Avenue and turned onto Central Avenue. The officers quickly entered their vehicles and pursued the Honda. On Central Avenue, the Honda spun out and the defendant fled on foot. Luna apprehended the defendant after a short chase.

The Honda appeared to have been ransacked. The stereo was missing, including the speakers. Petrucci's purse, which had been in the Honda at the time of the robbery, was no longer in the vehicle.

That same day, Bradley, Petrucci and Lima each independently selected a photograph of the defendant from an array and identified him as the perpetrator who had punched Bradley in the course of the robbery. Petrucci's purse, as well as the $200 it contained, was never recovered.

On August 31, 1999, the state charged the defendant, by substitute information, as follows: count one, robbery in the first degree in violation of § 53a-134 (a) (4); count two, larceny in the sixth degree in violation of §§ 53a-125b (a) and 53a-119; count three, attempt to commit robbery in the first degree in violation of § 53a-134 (a) (4) and General Statutes § 53a-49; and count four, assault in the third degree in violation of § 53a-61 (a) (1). In count one, the state accused the defendant of robbing Sperry of Petrucci's Honda. In count two, the state accused the defendant of stealing Petrucci's purse and its contents. In count three, the state accused the defendant of attempting to rob Bradley, and in count four, it accused the defendant of assaulting Bradley.

The defendant entered a plea of not guilty to each of the four charges and elected a jury trial. On June 28, 2000, the jury returned a verdict of guilty as to counts one, two and four, and a verdict of not guilty as to count three. The court accepted the verdict and rendered judgment accordingly. The defendant later was sentenced to a total effective term of twelve years imprisonment and eight years special parole. This appeal followed. Additional facts and procedural history will be presented as necessary.

I

The defendant claims that the court improperly denied (1) his motion for a judgment of acquittal at the close of the state's case-in-chief and (2) his motion for judgment of acquittal at the close of evidence. We disagree.

The following additional procedural history is relevant to our resolution of these claims. On June 21, 2000, the state concluded its case-in-chief. On that same day, the defendant moved for a judgment of acquittal as to all four counts. Regarding counts one and two, in which the state charged the defendant with robbery in the first degree and larceny in the sixth degree, respectively, the defendant argued that the state had failed to present evidence demonstrating that he had intended to deprive Petrucci permanently of the Honda, her purse and its contents. Regarding count four, assault in the third degree, the defendant argued that the state had failed to present evidence indicating that Bradley had suffered a physical injury as a result of being struck in the face.

Regarding count three, attempt to commit robbery in the first degree, defense counsel argued: "The third count, Your Honor, attempted robbery in the first degree in regards to what the state represented was, I guess, the wallet or the money of Seamus Bradley. I'd indicate to Your Honor that when we began the trial, that charge initially referred to an automobile. The state's representation on the record and that was changed to the actual money or wallet of Mr. Bradley. But in regards to that, I don't believe that there is a sufficient nexus to group together my client, Mr. Rodriguez, with the individual or another one of the individuals who may have had one or two of the weapons based upon the testimony of different witnesses. At no time other than leaving the scene together in the automobile are any of these three individuals together. The testimony—when the count was originally an automobile—there's some testimony that someone yelled, 'Get that car, too,' which I think would indicate a sufficient nexus. . . . The accomplice theory of linking my client with those two individuals to support the essential element that a gun was used is much less now that that

count doesn't refer to a car. We don't have that statement of 'get the other car, too.' "

That same day, the court denied the defendant's motion as to each of the four counts. The following week, the defendant presented evidence in his defense; he testified, as did his alibi witness, Felix Santiago, that he was in a different location at the time of the events attributed to him by the state's evidence. The state, in its rebuttal, called only one witness, Detective John Kennedy, who testified that, in his experience, individuals in distress sometimes call the police and falsely report a shooting to reduce the response time. At the close of the state's rebuttal, the defendant renewed his motion for a judgment of acquittal. He did not advance any additional arguments, however, and the court denied his renewed motion on the basis of the reasoning underlying its denial of the defendant's original motion for a judgment of acquittal.

In his first claim, which concerns the denial of the motion for a judgment of acquittal at the close of the state's case-in-chief, the defendant challenges only the sufficiency of the evidence adduced by the state in its case-in-chief. We first must determine whether that claim is reviewable in light of the waiver rule and the defendant's decision to present evidence in his defense.

"Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the

state's case. The waiver rule, therefore, forces the defendant to choose between waiving the right to a defense and waiving the right to put the state to its proof." *State* v. *Rutan*, 194 Conn. 438, 440–41, 479 A.2d 1209 (1984). The defendant contends, however, that the waiver rule contravenes his privilege against self-incrimination as guaranteed by the fifth amendment to the United States constitution[5] and article first, § 8, of the Connecticut constitution.[6]

In the past, our Supreme Court has questioned whether courts should continue to apply the waiver rule in criminal cases and, in particular, has suggested strongly that the rule may violate a criminal defendant's constitutional rights. See, e.g., *State* v. *Rutan*, supra, 194 Conn. 440–44.[7] Despite its criticism of the waiver rule, our Supreme Court has not expressly abandoned it. Instead, when addressing a claim challenging the propriety of a court's ruling on a motion for a judgment of acquittal at the close of the state's case-in-chief, our Supreme Court customarily has granted review and considered only the evidence that has been presented by the state in its case-in-chief, regardless of whether the defendant has presented evidence. See, e.g., *State* v. *Calonico*, 256 Conn. 135, 139–40, 770 A.2d 454 (2001); *State* v. *Cassidy*, 236 Conn. 112, 135 n.25, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled on other grounds, *State* v.

---

[5] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ."

[6] The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[7] In *State* v. *Rutan*, supra, 194 Conn. 444, our Supreme Court stated that "in an appropriate case, we may well conclude that the denial of a defendant's motion for acquittal at the close of the state's case may be assignable as error on appeal from a conviction, whether or not the defendant has introduced evidence in his or her own behalf."

*Alexander,* 254 Conn. 290, 296, 755 A.2d 868 (2000); *State* v. *Rulan,* supra, 444–45. In our analysis, we follow the lead of our Supreme Court.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger,* 249 Conn. 218, 224–25, 733 A.2d 156 (1999).

We are mindful that we need not consider the argument concerning the third count that the defendant raised at trial because the defendant was acquitted of that charge. Also, we note that should we conclude that the court properly denied the motion for a judgment of acquittal at the close of the state's case-in-chief, it necessarily follows that the court properly denied the motion at the close of evidence, because the defendant,

in the latter motion, merely renewed the arguments he presented in the former.

As to counts one and two, the defendant argued at trial that the state had failed to present evidence indicating that the defendant had intended to deprive Petrucci permanently of the Honda, her purse and its contents.[8]

"The elements of larceny . . . are: (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of it permanently; and (3) the lack of consent of the owner. . . . To prove the element of intent within the context of larceny, the state must show that the defendant intended to deprive another person of property permanently. . . . Intent may be inferred by the fact finder from the conduct of the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Kimber*, 48 Conn. App. 234, 240, 709 A.2d 570, cert. denied, 245 Conn. 902, 719 A.2d 1164 (1998).

During its case-in-chief, the state called, among others, Bradley, Petrucci, Lima, Luna and Sheffield as witnesses. Bradley testified that the defendant diverted his attention from the other two perpetrators by asking him for his wallet and striking him in the face. Petrucci testified that her purse and its contents were in the Honda at the time that it was taken and that her mother was the owner of the vehicle. Bradley, Petrucci and Lima all testified that the defendant jumped into the Honda moments before it sped off, and they described

---

[8] For clarity, we note that General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

in detail a high level of coordination among the defendant and the two armed perpetrators. Luna and Sheffield testified that, on the morning following the robbery, they had observed the defendant driving the Honda and that, as they approached him, he had attempted to evade capture by driving away and then running away. Sheffield testified also that the interior of the Honda appeared to have been ransacked, and Petrucci testified that her purse and its contents never were recovered. Construing that evidence in the light most favorable to sustaining the verdict, together with the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant intended to deprive permanently the owner of the Honda as well as the owner of the purse and its contents.[9]

As to count four, the defendant argued at trial that the state had failed to present evidence indicating that Bradley had suffered a physical injury as a result of being struck in the face. "A person is guilty of assault in the third degree in violation of § 53a-61 when he causes 'physical injury' to the victim. Physical injury is defined as 'impairment of physical condition or pain . . . .' General Statutes § 53a-3 (3); *State* v. *Henderson*, 37 Conn. App. 733, 743, 658 A.2d 585, cert. denied, 234

---

[9] The defendant, on appeal, claims also that the state failed to prove that he had the mental state necessary to have been convicted properly as an accessory to the robbery and the larceny charged in counts one and two, respectively. A review of the record discloses that this claim is unpreserved and that the defendant was charged as a principal in both counts. We nonetheless acknowledge that a defendant can be convicted properly as a principal under § 53a-134 (a) (4) in instances where a participant in a robbery, other than the defendant, displays or threatens the use of what was portrayed, either by words or conduct, as a firearm. See *State* v. *McCalpine*, 190 Conn. 822, 831 n.7, 463 A.2d 545 (1983) (§ 53a-134 "imposes vicarious liability on a defendant when he commits a robbery with another person who, although unbeknownst to him, is armed with a deadly weapon").

Conn. 912, 660 A.2d 355 (1995)."[10] *State* v. *Jordan*, 64 Conn. App. 143, 147, 781 A.2d 310 (2001). During the state's case-in-chief, Bradley testified that the defendant had punched him on the left side of his face, causing him to fall backward over a railing. Construing that evidence in the light most favorable to sustaining the verdict, together with the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant caused Bradley to suffer a physical injury. See id. (in absence of direct evidence of pain, jury reasonably could have inferred that defendant had caused victim pain when he struck her face, grabbed her shirt, pinned her shoulders to bed, pulled her hair).

Accordingly, we conclude that, as to counts one, two and four, the court properly denied the defendant's motion for a judgment of acquittal at the close of the state's case-in-chief. For the reasons we expressed previously in this opinion, we therefore conclude also that the court properly denied, as to those counts, the defendant's motion for a judgment of acquittal at the close of evidence.

II

Next, the defendant claims that the court improperly permitted the state to amend the substitute information. We disagree.

The following additional procedural history is relevant to our resolution of this claim. On June 27, 2000, after the state had presented its case-in-chief, the state moved to amend count one of the information, in which it had accused the defendant of robbery in the first degree. Count one, at that point, alleged as follows:

[10] General Statutes § 53a-3 (3) provides: " 'Physical injury' means impairment of physical condition or pain . . . ."

"[The state] accuses Billy Rodriguez of Robbery in the First Degree and charges that at the City of Bridgeport, Fairfield County, on or about the 29th day of July, 1999, the said Billy Rodriguez stole certain property from one Brandy Petrucci and Jared Sperry, and in the course of the commission of the crime displayed and threatened the use of what he represented by his words or conduct to be a firearm, to wit: a handgun, in violation of Section 53a-134 (a) (4) of the Connecticut General Statutes."

The state asked the court for permission to amend that count by, inter alia, adding the phrase "he or another participant" after the word "crime." The state informed the court that it had intended to conform count one to the text of § 53a-134 (a) (4) and that the omission of that phrase was a typographical error.

The defendant objected to the state's motion, arguing that if it were granted, a substantive change would result. The defendant emphasized that the state already had rested and further argued that "[a]llowing them to conform their information or that count of the information at this point to the evidence in their case is prejudicial to my client."

The court granted the state's motion on the basis of the following reasons: (1) the state's explanation that the omission was a typographical error was credible; (2) good cause for the amendment had been demonstrated; (3) if the amendment was permitted, the defendant would not stand accused of a different crime; and (4) the defendant did not advance an argument in support of his bare assertion that he would be prejudiced if the amendment was permitted.

The state amended count one of the substitute information accordingly. Amended count one provided: "[The state] accuses Billy Rodriguez of Robbery in the First Degree and charges that at the City of Bridgeport,

Fairfield County, on or about the 29th day of July, 1999, the said Billy Rodriguez stole certain property from one Brandy Petrucci, and in the course of the commission of the crime *he or another participant* displayed and threatened the use of what he represented by his words or conduct to be a firearm, to wit: a handgun, in violation of Section 53a-134 (a) (4) of the Connecticut General Statutes." (Emphasis added.)

On appeal, the defendant claims the court improperly concluded that (1) the amendment did not charge a different crime and (2) the amendment did not prejudice him. Additionally, the defendant alleges that the omission actually was not the result of a typographical error. Instead, he argues, the state provided that excuse to veil its otherwise improper attempt to conform its information to the evidence that it had presented. Therefore, he claims, the court improperly concluded that the state had demonstrated good cause for the amendment.

We now set forth the rule of practice that guides our analysis of the defendant's claims. Practice Book § 36-18 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged *and* no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant." (Emphasis added.)

Before addressing whether the amendment charged a different offense or whether it prejudiced the defendant, we first focus on the defendant's claim concerning good cause. We acknowledge that "[a]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 420, 680

A.2d 147 (1996). Accordingly, we decline to disturb the court's decision to credit the state's assertion that the omission was a typographical error and, therefore, reject the defendant's claim that the court improperly concluded that the state had shown good cause for the amendment. See *State* v. *Nguyen*, 253 Conn. 639, 657, 756 A.2d 833 (2000) (in determining whether sequestration order was violated, trial court was entitled to credit defense counsel's assertions and was not required to conduct evidentiary hearing). We now set forth the test for determining whether an amended information charges a different offense.

"Practice Book § 624 [now § 36-18] is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend." *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993). Consequently, we do not determine whether offenses are different or additional by comparing the elements of the respective offenses as we do when we consider certain claims concerning double jeopardy. See id. Instead, "the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." Id.

Furthermore, our Supreme Court's decision in *State* v. *Wallace*, 181 Conn. 237, 435 A.2d 20 (1980), is especially insightful. "In *Wallace*, the defendant was charged with the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). Just before the state completed its case-in-chief, the trial court permitted the state to amend the information by deleting subsection (a) (2) of § 53a-134 and substituting in its place subsection (a) (4). . . . The jury subsequently found the defendant guilty of the crime charged in the amended information.

"Under the subsection originally charged in *Wallace*, § 53a-134 (a) (2), a person is guilty of robbery in the

first degree if he 'is armed with a deadly weapon.' Under the amended charge, subsection (a) (4), a person is guilty of robbery in the first degree if he 'displays or threatens the use of what he represents by his words or conduct to be a . . . firearm . . . .' The amended charge differed from the original charge in two factual respects.

"First, the original charge differed from the amended charge regarding the item that the defendant must have had on his person to be found guilty of the offense. The original subsection referred to a deadly weapon. The amended subsection, however, referred to anything that the defendant represented to be a firearm, even if it were not capable of actually firing a shot. Thus, the amended charge required the state to prove the presence of an item different from that referred to in the original charge. Second, the original and amended charges differed with respect to the actions they proscribed. Under the original subsection, the defendant needed only to be armed with a deadly weapon to be found guilty. He need not have displayed or threatened to use the weapon. The amended subsection, however, only pertained to one who actually displayed or threatened to use the item involved. Thus, the amended charge required the state to prove different conduct from the original charge.

"Nevertheless, [our Supreme Court] concluded in *Wallace* that the amended information did not charge a different or additional offense. Both the original and the amended informations charged the defendant with the crime of robbery in the first degree. [Our Supreme Court] concluded that the amended charge was the same as the original charge for purposes of Practice Book § 624 [now § 36-18]." (Citation omitted.) *State* v. *Tanzella*, supra, 226 Conn. 609–10.

In the present case, the challenged amendment to count one merely incorporated additional language

from § 53a-134 (a), which provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, *he or another participant in the crime* . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." (Emphasis added.) In light of *Wallace*, we conclude that the amended information did not charge a different crime. It instead charged an alternative means of committing the same crime, namely, robbery in the first degree. Consequently, we conclude that the substitute information provided adequate notice of the alternative means of committing robbery in the first degree alleged in the amended substitute information.

Having determined that the amendments to the information did not charge additional or different offenses, we now consider whether the amendment prejudiced the defendant's substantive rights. See id., 614.

"If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that 'no substantive rights of the defendant would be prejudiced.' Practice Book § 624 [now § 36-18]. . . . This allocation of burden encourages the state to prepare its case carefully because it bears the burden of justifying subsequent adjustments." *State* v. *Tanzella*, supra, 226 Conn. 614–15. "Moreover, an amendment to an information does not necessarily prejudice a defendant's substantive rights within the meaning of Practice Book § 624 [now § 36-18] simply because the defendant may have evidence available to contradict a factual allegation of the original charge, and, as a result of the amendment, he no longer faces that particular factual allegation." *State* v. *Tanzella*, supra, 615 n.15.

In the present case, the defendant asserted, as an alibi, that he had been elsewhere at the time of the events claimed by the state. He did not also contend, however, that no robbery had occurred in or near Shelton Park on the night of July 29, 1999. We conclude that the challenged amendment did not reduce the efficacy of the defense that was presented because that amendment, which solely concerned the means of committing the robbery, was unrelated to the issue of whether the defendant was present at Shelton Park at the time of the robbery. See *State* v. *Wallace*, supra, 181 Conn. 239. Moreover, nothing in the record indicates that the defendant either would have employed a different defense if the amended offense had been alleged at the outset or suffered any unfair surprise that deprived him of a substantive right. Finally, the challenged amendment also did not even alter the allegation concerning the defendant's mental state at the time of the crime. See *State* v. *McCalpine*, supra, 190 Conn. 831 n.7 (§ 53a-134 "imposes vicarious liability on a defendant when he commits a robbery with another person who, although unbeknownst to him, is armed with a deadly weapon"). For those reasons, we conclude that the amendment did not prejudice the defendant's substantive rights. The court properly permitted the state to amend the substitute information.

The judgment is affirmed.

In this opinion the other judges concurred.