## STATE OF CONNECTICUT *v.* ARMANDO RAMIREZ
## (AC 25609)

Flynn, Harper and Mihalakos, Js.*

---

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued November 14, 2005—officially released April 18, 2006

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's

attorney, and *Mark A. Stabile*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Armando Ramirez, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 and burglary in the second degree in violation of General Statutes § 53a-102.[1] On appeal, the defendant claims that (1) the court improperly permitted the state to amend the short form information, (2) there was insufficient evidence to convict him of burglary in the second degree, (3) the court improperly marshaled evidence in its charge to the jury and (4) the court failed to instruct the jury on the credibility of accomplice testimony. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 5, 2000, at approximately 9:30 p.m., the defendant rang the doorbell of the apartment at 80 Memorial Drive in Willimantic. Crystal Hedlin, Jared Jones and Megan Atwood, the residents of the apartment, were all home at the time. Hedlin answered the door. The defendant asked Hedlin whether she had any marijuana. She indicated that she did not and then shut the door. Approximately one hour later, the defendant returned to the apartment with three other men. Among these men was Danny Lyford, an acquaintance of Hedlin, Jones and Atwood. With the exception of the defendant, all of the men wore masks or towels covering their faces. Hedlin recognized Lyford by the frame of his body and because he was wearing a T-shirt that she had seen him wear on prior occasions.

The group of men opened the door and entered the apartment. The defendant, who was holding a gun,

---

[1] The court imposed a total effective term of eight years imprisonment, followed by six years of special parole.

ordered Hedlin, Jones and Atwood to remain in the living room and not to move. At the same time, the other men removed the batteries from a cordless telephone and then went upstairs and ransacked one of the bedrooms in an effort to find marijuana. The men yelled to the defendant that there was a safe in the bedroom, and the defendant ordered Hedlin to go upstairs to unlock the safe. Hedlin went upstairs and explained to the men that she did not know the combination to the safe and that there were no drugs in the bedroom. When they were unable to find any marijuana in the apartment, the men gathered several items from the apartment, including a compact disc player, a "Nintendo 64" video game and a DVD player. They then left the apartment and drove away.

After the group of men left the apartment, Hedlin telephoned the police from a neighbor's apartment. At approximately 10:30 p.m., Kenneth Buchanan, an officer with the Willimantic police department, responded to the call. After arriving at the scene, Buchanan spoke with Hedlin and Atwood. While in the apartment, he observed that a second floor bedroom had been ransacked, and a cordless telephone, which was missing its batteries, was on the floor. No suspects were apprehended at that time.

Approximately ten days after the robbery, Atwood spoke with Ian Brown, an officer with the Willimantic police department. Atwood told Brown that she had observed the man who had robbed her, Hedlin and Jones on Main Street in Willimantic. Brown surveyed the area, but did not see anyone fitting the description provided by Atwood. Not long after her first telephone call to Brown, Atwood telephoned again to notify the police that she had seen the same man at a pay telephone on Main Street. Brown returned to the area described by Atwood and saw the defendant, who fit Atwood's description. An officer who was with Brown

detained the defendant while Brown went to a nearby location to discuss the situation with Atwood. Several minutes later, Atwood positively identified the defendant as the individual who was holding the gun during the robbery. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly permitted the state to amend its information at the close of the state's case-in-chief and that as a result, he was denied his constitutional right to notice of the nature and cause of the charges against him. We disagree.

The following additional facts are relevant to our resolution of this issue. After the close of the state's case-in-chief, defense counsel moved for a judgment of acquittal. Before the court heard argument on defense counsel's motion, however, the state asked the court for permission to file a substitute information. The state sought to amend the information to indicate that the defendant was being charged with burglary in the second degree in violation of § 53a-102[2] instead of burglary in the first degree in violation of General Statutes § 53a-101.[3] Defense counsel objected to the state's filing a substitute information to the extent that it affected the defendant's motion for a judgment of acquittal. None-

[2] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when such person (1) enters or remains unlawfully in a dwelling at night with intent to commit a crime therein, or (2) enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein."

[3] General Statutes § 53a-101 (a) provides: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

theless, without further elaboration, the court permitted the state to file a substitute information as requested.[4]

Immediately thereafter, the court heard argument from both parties on the defendant's motion for a judgment of acquittal. The defendant argued that the state had failed to prove all of the elements of the crimes charged. In particular, the defendant challenged the state's proof regarding the element of identity. The court denied the motion for a judgment of acquittal.

The defendant argues that he was denied his constitutional right to be informed of the nature and cause of the accusation against him under the sixth amendment to the United States constitution, and article first, § 8, of the constitution of Connecticut when the court permitted the state to file a substitute information at the close of the state's case-in-chief. More specifically, the defendant claims that the court improperly allowed the state to amend the information because burglary in the second degree is not a lesser offense included within burglary in the first degree. Consequently, the defendant argues that the amended information charged him with an additional or different offense in violation of Practice Book § 36-18. As a result, he requests a new trial.

"On appeal, our [standard of review] of the court's decision to permit an amendment to the information is one of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Grant*, 83 Conn. App. 90, 96–97, 848 A.2d 549, cert. denied, 270 Conn. 913, 853 A.2d 529 (2004). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Carneiro*, 76 Conn. App. 425, 438, 820 A.2d 1053, cert.

---

[4] We note that the state failed to indicate on both the original information and the amended information which parts of General Statutes §§ 53a-101 and 53a-102 the defendant had violated.

denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003).

"Before a trial begins, the state has broad authority to amend an information pursuant to Practice Book § 36-17. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 36-18." (Internal quotation marks omitted.) *State* v. *Grant*, supra, 83 Conn. App. 96–97. That section provides that the state may amend the information after the commencement of trial as long as "no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ." Practice Book § 36-18. We begin, therefore, by determining whether the amendment charged a new or different offense.

As noted by this court in *State* v. *Ward*, 76 Conn. App. 779, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003), "[a] criminal defendant has a constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . The state satisfies this constitutional mandate when its pleadings inform the defendant of the charge[s] against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and [are] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . .

"The information serves the very important function of informing the defendant of the nature and cause of the accusation as required by our federal and state constitutions. . . . Where one or more offenses are lesser than and included in the crime charged in the information, notice of the crime charged includes notice of all lesser included offenses." (Citations omitted; internal quotation marks omitted.) Id., 787.

The state properly acknowledges that, as charged, burglary in the second degree was not a lesser offense included within burglary in the first degree because the original information did not provide any details relating to either the time or the location of the crime. Consequently, the defendant was not put on notice that he was charged with burglarizing a dwelling at night in violation of § 53a-102; he was put on notice only that he was charged with burglary as it is defined in § 53a-101. Compare id., 794 (concluding that burglary in second degree was lesser offense included within burglary in first degree where information alleged defendant had entered or remained unlawfully in dwelling at approximately 11:33 p.m.). We conclude, therefore, that the court improperly allowed the state to amend the information.

The state argues, nonetheless, that the improper amendment was harmless. The state contends that the amendment did not prejudice the defendant because his defense at trial was based on a theory of mistaken identity. The state claims that, rather than challenging the evidence that the burglary had occurred at night and in a dwelling or that the perpetrator was armed with a gun, the defendant focused on the witnesses' credibility and their identifications of him as the perpetrator.

As this court has noted, the improper amendment of the information "implicates the defendant's constitutional right to fair notice of the charges against him . . . [and, consequently] the state must prove such error was harmless beyond a reasonable doubt." (Citations omitted.) *State* v. *Ignatowski*, 10 Conn. App. 709, 715, 525 A.2d 542, cert. denied, 204 Conn. 812, 528 A.2d 1157 (1987).

The record reveals that the defendant's defense was based on a theory of mistaken identity. The defendant

theorized that the witnesses who identified him were not credible in their accounts of what had happened during the robbery or who had participated in it. This theory was emphasized in the defendant's motion for a judgment of acquittal and in his counsel's closing argument, both of which focused on the conflicting testimony of Hedlin, Jones, Atwood and Lyford. The defense theory, therefore, was not related to the elements of the crime as originally charged or as amended. As a result, the amendment did not prejudice the defense because the effect of the amendment was logically distinct from the defense asserted. See *State* v. *Tanzella*, 226 Conn. 601, 616, 628 A.2d 973 (1993).

Furthermore, nothing in the record indicates either that the defendant would have presented a different defense if the state had amended the information earlier in the proceedings or that he suffered unfair surprise as a result of the late amendment, which deprived him of a substantive right. See *State* v. *Rodriguez*, 69 Conn. App. 779, 796, 796 A.2d 611, cert. denied, 260 Conn. 938, 802 A.2d 91 (2002). Indeed, the defendant cross-examined each of the witnesses extensively about where the relevant events occurred, what time of day the burglary took place and who was present during the burglary. We conclude, therefore, that the improper amendment was harmless beyond a reasonable doubt.

II

The defendant next claims that there was insufficient evidence to support his conviction of burglary in the second degree in violation of § 53a-102 because the state failed to prove that the events in question occurred at night. We disagree.[5]

---

[5] The defendant seems to imply that he preserved his claim by filing a motion for a judgment of acquittal. That motion, however, focused only on the sufficiency of the evidence with respect to the issue of identity. Nonetheless, we review his claim because it implicates his constitutional right not to be convicted on insufficient proof. See *State* v. *Northrop*, 92 Conn. App. 525, 528 n.3, 885 A.2d 1270 (2005), cert. denied, 277 Conn. 905, 894 A.2d 988 (2006).

"The appellate standard of review of sufficiency of the evidence claims is well established. In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . We are content to rely on the [jury's] good sense and judgment." (Internal quotation marks omitted.) *State* v. *Serrano*, 91 Conn. App. 227, 241–42, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005).

Under the circumstances of this case, to prove that the defendant committed burglary in the second degree,

the state bore the burden of establishing beyond a reasonable doubt that the defendant entered or remained in the apartment at 80 Memorial Drive unlawfully and that he did so at night with the intent to commit a crime therein.[6] See General Statutes § 53a-102 (a) (1). The term "night" is defined by General Statutes § 53a-100 (a) (3) as "the period between thirty minutes after sunset and thirty minutes before sunrise."

All of the witnesses at trial testified that the burglary occurred after 9 p.m. Hedlin testified that the defendant, Lyford and the other men with them burglarized her apartment at approximately 10:30 p.m. Jones testified that they entered the apartment sometime between 9 p.m. and midnight and further claimed that it was dark at the time. Lyford testified that the burglary took place at approximately 9:30 p.m. Atwood did not recall the exact time when the defendant entered the apartment, but she testified that it was getting dark when the defendant came to the door the second time. In addition to the testimony of the victims and Lyford, the defendant's accomplice, Buchanan testified that he arrived at the scene at 10:30 p.m. Stanley Gervais, another officer with the Willimantic police department, testified that he arrived at the scene at 10:50 p.m., not long after Buchanan. Although there was some variation in the testimony of the witnesses as to what time the burglary occurred, all of the witnesses who could provide a time agreed that the burglary occurred after 9 p.m. on May 5, 2000. "The jury is entitled to draw reasonable inferences from the evidence before it and, in performing its function, the jury brings to bear its common sense and experience of the affairs of life." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128,

---

[6] Although the information did not specify which subparagraph of General Statutes § 53a-102 (a) the defendant was charged with violating, the court's instruction to the jury identified the elements of burglary in the second degree as those provided in § 53a-102 (a) (1).

142, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004). Viewing the evidence in the light most favorable to sustaining the verdict, as we must, we conclude that the testimony provided by all of the witnesses, combined with the common sense of the jury, was sufficient to establish that the defendant either entered or remained in the apartment unlawfully at night on May 5, 2000.

## III

The defendant further claims that the court improperly marshaled the evidence in favor of the state, thereby violating his right to a fair trial. We disagree.

We note initially that the defendant did not preserve his claim at trial. Although he contends that he preserved the claim by filing a motion for a new trial, a claim of instructional error is properly preserved only when "the matter is covered by a written request to charge or exception has been taken by the party appealing *immediately* after the charge is delivered. . . ." (Emphasis added.) Practice Book § 16-20. In the alternative, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review the claim because the record before us is adequate for review, and the defendant's claim is of constitutional magnitude. See *State* v. *Dixon*, 62 Conn. App. 643, 647, 772 A.2d 166 (2001).

"A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficul-

ties of a particular case. . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. . . .

"[W]e review the entire charge to determine whether it is reasonably possible that it misled the jury. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict of the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Young*, 68 Conn. App. 10, 17, 791 A.2d 581, cert. denied, 260 Conn. 909, 795 A.2d 547 (2002).

The defendant argues that the court improperly commented both on credibility issues and on inconsistent statements in its charge to the jury. The defendant contends that the court "improperly assumed a position of advocacy in favor of the state by calling attention to evidence that tended to minimize the significance of the conflicting testimony and failing to call attention to the testimony that tended to create reasonable doubt as to the witnesses' credibility." A thorough review of the charge in its entirety reveals that although the court commented on the credibility of the witnesses, it did so fairly.

The court prefaced its comments by emphasizing that it is the jury's responsibility to determine the facts and that any references to the evidence made by the court were for illustrative purposes only. During the charge

on credibility, the court noted that it was the jury's role to determine whether any inconsistencies in the witnesses' testimony were a result of the witness "telling an intentionally false statement or [whether] it was a lapse of memory or whether it was a relatively unimportant detail in the larger scheme of things." The court then noted several instances of inconsistent testimony as examples and reiterated that it was the jury's responsibility to decide whether the witness was being truthful or untruthful. Contrary to the defendant's contention that the court minimized the significance of the discrepancies among the witnesses' testimony, the court merely was providing alternative explanations for the inconsistencies. We conclude, therefore, that there is not a reasonable possibility that the jury was misled by the court's instruction. Accordingly, the defendant's claim fails under the third prong of *Golding* because the defendant has not established that a constitutional violation clearly exists and clearly deprived him of a fair trial.

IV

The defendant's final claim is that the court committed reversible plain error when it failed to instruct the jury regarding the credibility of accomplice testimony as it pertained to the testimony of Lyford. We disagree.

The following additional facts are relevant to the defendant's claim. Lyford testified at trial for the prosecution. He testified that he was with the defendant and two other individuals on the night of May 5, 2000. Lyford testified that the group of men wanted to purchase marijuana, but they did not have any money with which to purchase drugs that night. Because Lyford had purchased marijuana from Hedlin and Jones on prior occasions, he suggested that the group go to their apartment to steal drugs. When the four men arrived at the apartment, the defendant went to the door and inquired as to

whether the occupants had any marijuana. After waiting for awhile in the backyard, the four men entered the apartment. Lyford testified that the defendant stayed downstairs and pointed a gun at Hedlin, Jones and Atwood to prevent them from moving.

Lyford later was arrested for his involvement with the burglary. He said that the state initially offered him a plea agreement of fifteen years imprisonment. When he agreed to testify on the state's behalf, however, Lyford was sentenced to one year imprisonment followed by five years of probation. After agreeing to cooperate with the state, a detective from the Willimantic police department showed Lyford a photographic lineup. He positively identified the defendant as the gunman.

In the present case, the court did not give the jury an instruction on the special considerations applicable to accomplice testimony. Rather, with respect to Lyford and Jones, the court instructed the jury that the prior felony convictions of these witnesses could be considered in evaluating their credibility. The defendant argues that by discussing the felony convictions of these two witnesses together, the court's instruction allowed the jury to treat the testimony of Lyford and Jones similarly because there was no emphasis on Lyford's additional role as the defendant's accomplice. Because the defendant failed to preserve his claim by requesting such a charge or by objecting to the charge as given, he seeks review under the plain error doctrine set forth in Practice Book § 60-5.

"The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of

policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . .

"Whether in the interest of justice we notice this failure to give the accomplice instruction as plain error depends in part on whether the failure was harmful. The failure to give the accomplice instruction would be harmful only if the absence of this instruction was likely to have affected the jury's verdict. . . . Because the failure to give the accomplice instruction does not violate a constitutional right, it is the defendant's burden to show its harmfulness." (Citation omitted; internal quotation marks omitted.) *State* v. *Schmidt*, 92 Conn. App. 665, 672, 886 A.2d 854 (2005), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006).

In its charge on credibility, the court noted that the jury could take into account whether a "witness [had] an interest in the outcome of the case or any bias [or] prejudice concerning any party or matter involved in the case." During the court's discussion of the testimony regarding the defendant's identity, the court noted that Lyford, one of the individuals who identified the defendant as the perpetrator of the crime, testified that the defendant was his accomplice in the robbery and burglary. The court further noted that "Lyford testified that he knew the defendant and could identify him for the police. He had given a statement to the police indicating that he was one of the persons involved in the crime and that [the defendant] was the person who held the gun during the events of May 5. The police showed him pictures of a number of different persons. Lyford picked out the picture of the defendant, Armando Ramirez, as the Armando who accompanied him in this event."

Although the court did not instruct the jury to scrutinize accomplice testimony more closely, we are not persuaded that the court's charge as a whole, which included several references to Lyford's role as the defendant's accomplice, was harmful.

This conclusion is further substantiated by the fact that Lyford was not the only individual who identified the defendant as the gunman. Hedlin and Atwood both testified that the defendant was the individual who came to the door of their apartment to inquire whether they had any marijuana. Along with Jones, they also testified that the defendant later returned with Lyford and the other men and entered their apartment without permission. They all identified the defendant as the man who pointed a gun at them in the living room and told them not to move while the other men searched the second floor of the apartment for drugs. In light of this additional testimony, and the court's charge as a whole, we conclude that the defendant has not proven that the court's failure to give an instruction on accomplice testimony, sua sponte, was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.